## In re TOTAL TRANSPORTATION SERVICE, INC., Debtor.

### Bankruptcy No. 1–82–01924.

United States Bankruptcy Court, S.D. Ohio, W.D.

March 27, 1984.

Paul A. Nemann, William T. Hayden, Cincinnati, Ohio, for debtor-in-possession.

Bernard C. Fox, Cincinnati, Ohio, for District 34, Lodge 804 Intern. Assoc. of Machinists.

Robert A. Goering, Cincinnati, Ohio, for Creditors' Committee.

## DECISION RE REJECTION OF LABOR CONTRACT

BURTON PERLMAN, Bankruptcy Judge.

The captioned case has been substantively consolidated with a number of other cases, one of which is a Chapter 11 case which was filed for Peterbilt of Dayton, Inc. (hereafter Peterbilt). The several cases which are consolidated all were filed on July 9, 1982. On May 27, 1983 Peterbilt filed Application for Approval of Debtor in Possession's Rejection of Executory Labor Contract. The subject contract was entered into between Peterbilt and District No. 34 Local Lodge No. 804 of the International Association of Machinists and Aerospace Workers AFL–CIO. The application came on for hearing before the court, following which the parties submitted memoranda with respect to their positions. We deny the application.

At the hearing it was established that Peterbilt, a wholly owned subsidiary of Total Transportation, closed its doors on August 28, 1983. At the time of closing, there were five employees of Peterbilt. They were paid currently their wages and vacation time up until the time of closing. The testimony was that at the time the application to reject was filed there were seven employees of Peterbilt, but only five at the time that the doors were closed. The testimony indicated that there is approximately some $2800.00 in dispute by way of wages which will be affected by this decision.

The parties are in agreement that a collective bargaining agreement can be rejected in bankruptcy. They differ, however, in what is required to be shown by the debtor to justify the rejection. It is debtor's view simply that since the operations of Peterbilt have been terminated, there is no need to consider the impact of the agreement with respect to employees' future rights under the agreement. Since such rights are not at stake, rejection should be permitted.

Debtor points out that if rejection is not permitted, the five employees covered by the collective bargaining agreement at the time the business was closed, would have claims arising from Peterbilt's failure to give those employees automatic wage increases as required by the agreement, and it is estimated that the total for all such claims would approximate $2800.00. Rejection would allow this amount to be classified as a pre-petition debt, while denial of rejection, it is agreed between the parties, means that this amount will be treated as an administrative claim. Rejection thus would be beneficial to the debtor. The claims of certain other claimants, in the view of debtor, would be affected by rejection.

The Union, to the contrary, takes the position that rejection should not be permitted. It calls to our attention all of the authorities consisting of Court of Appeals decisions extant at the time memoranda were filed, correctly pointing out that regardless of which standard for allowing rejection of collective bargaining Agreements is applied, the burden is on the debtor to justify the rejection. The Union says that the only showing here is that rejection would save the debtor approximately $2800.00 which would become an administrative claim if rejection were not permitted. The Union says that this in effect would simply be applying to this collective bargaining situation the standard applicable to ordinary commercial contracts. This, says the Union, would be incorrect.

■ As noted by the respective parties, at the hearing we raised the question whether under the circumstances of this case, the collective bargaining agreement here in question is an executory contract which can be rejected. We have reached the conclusion that it is not.

The subject matter of a collective bargaining agreement is the mutual rights and obligations of union members and employer in connection with employment to be performed by union members at a facility operated by the employer. On the part of the union member the rights generally have to do with concerns such as safety and sanitary conditions and the like, and also his rights to compensation including wage increases. The rights of the employer have to do with freedom from interruptions of work. Both employer and union members have an interest in an effective, working grievance procedure. The rights spelled out in the usual collective bargaining agreement for employer and union members comprise correlative obligations of each to the other. If the employer ceases operation of the facility, there can be no future performance by either the employer or union members under the collective bargaining agreement of such obligations. Thus, while continued operation of the business is not directly the bargained for performance of the

collective bargaining agreement, it is an essential condition to future performance by both parties.

*In re Jolly,* 574 F.2d 349 (6th Cir.1978), cert. den. 439 U.S. 929, 99 S.Ct. 316, 58 L.Ed.2d 322 (1978), is illuminating. While *Jolly* is a Chapter XIII case under pre-Bankruptcy Code law, it is applicable here. In that case a Chapter XIII debtor had purchased burial plots to be paid for over a period of time. The purchaser defaulted whereupon judgment was taken against him. The Chapter XIII trustee rejected the contract. The Bankruptcy Court permitted the rejection and disallowed the seller's claim. Though affirmed by the District Court, Judge Peck writing for the Court of Appeals reversed, holding that the contract was not executory. The Court said:

> Thus, executory contracts involve obligations which continue into the future. S.Rep. No. 94–458, 94th Congress, 1st Sess. (1975). They include leases, employment contracts and agreements to buy or sell in the future. Generally, they are agreements which include an obligation for the debtor to do something in the future.

*Id.* at 351. *See also In re Biron, Inc.,* 23 B.R. 241, 242 (Bkrtcy.S.D.Ohio 1982). Applying the principles derived from authorities to the instant case, clearly the collective bargaining agreement before us is not executory because future performance pursuant to it will not take place.

Debtor contends that whether a contract is executory is to be determined as of the date of filing the bankruptcy case, citing *In re Rovine Corp.,* 6 B.R. 661, 666 (Bkrtcy.W. D.Tenn.1980) to support this position. We find this contention without merit. *Rovine* dealt with rejection of a franchise agreement and there is no indication that there was any change in debtor's situation pre- and post-filing. The question at hand here was not in issue there. We cannot accept the distinction debtor here seeks to make, for we must deal with equities, not legalities, in this Court.

■ In addition to the foregoing basis for our decision, we have concluded that the

motion to reject should also be denied, even if it were to be assumed that the agreement in question was executory, because application of the appropriate balancing test leads us to that conclusion as well. In their memoranda, the parties have devoted considerable effort to setting forth the views of the several circuits regarding the circumstances required in order that rejection of a collective bargaining agreement be permitted. It is not necessary for us to select from the several standards advanced, because on February 22, 1984 the Supreme Court resolved the differences among the circuits in *NLRB v. Bildisco & Bildisco,* —— U.S. ——, 104 S.Ct. 1188, 79 L.Ed.2d 482 (1984). In *Bildisco,* the Supreme Court affirmed the Third Circuit which had held in favor of rejection of the collective bargaining agreement there involved. The Court held that a Bankruptcy Court could approve rejection of such contracts "upon an appropriate showing." After holding that 11 U.S.C. § 365(a) extends to collective bargaining agreements, the Court held that a somewhat stricter standard should govern the decision of the Bankruptcy Court to allow rejection of a collective bargaining agreement than is true for other kinds of contracts. The Court rejected the strict standard adopted by the Second Circuit in *Brotherhood of Railway and Airline Clerks v. REA Express, Inc.,* 523 F.2d 164 (2nd Cir.1975), cert. denied, 423 U.S. 1017, 96 S.Ct. 451, 46 L.Ed.2d 388 (1975), which had required a showing by the debtor that a reorganization would fail unless rejection is permitted. Instead, the Court held that rejection should be permitted:

> ... if the debtor can show that the collective-bargaining agreement burdens the estate, and that after careful scrutiny, the equities balance in favor of rejecting the labor contract. The standard which we think Congress intended is a higher one than that of the 'business judgment' rule, but lesser one than that embodied in the *REA Express* opinion of the Court of Appeals for the Second Circuit.

*Bildisco,* —— U.S. at ——, 104 S.Ct. at 1196. The "business judgment" test requires only a showing that performance by the debtor under the contract in question would be burdensome, (and non-performance would benefit the estate) to be determined by a standard of business judgment. *In re Bildisco,* 682 F.2d 72 (3rd Cir.1982); *In re Minges,* 602 F.2d 38 (2nd Cir.1979). The Supreme Court also said in *Bildisco* that:

> Since the policy of Chapter 11 is to permit successful rehabilitation of debtors, rejection should not be permitted without a finding that that policy would be served by such action.

*Bildisco,* —— U.S. at ——, 104 S.Ct. at 1197.

It is apparent that in *Bildisco* the Court directs not only a balancing of the interests of the parties, but also a balancing of the imperatives of the Congress as expressed on the one hand in the Bankruptcy Code, and on the other, in the National Labor Relations Act. *See also, In re Brada Miller Freight System, Inc.,* 702 F.2d 890, 891 (11th Cir.1983).

Applying the standards which appear in *Bildisco,* we have reached the conclusion that the application for approval of rejection should be denied. Notwithstanding that Peterbilt has ceased operations, we cannot ignore the fact that it is a collective bargaining agreement which is sought to be rejected. We must therefore, in conformity with the requirements of *Bildisco,* balance the interests of the parties, having in mind the policies and objectives of Congress in enacting both the Bankruptcy Code, and the National Labor Relations Act. Because we are not viewing the equities from the point of view of what would be most beneficial to a successful rehabilitation since operations of Peterbilt have ceased, it is the policies of the Labor Act which ought in the present case to have predominance. Rejection of that agreement, then, should not be permitted for it will serve no rehabilitative end for the employer contracting party.

Doubtless debtor will resist this conclusion because the contracting employer, Peterbilt, has been substantively consolidated with other affiliated entities, all of which

are the subject of a single Chapter 11 reorganization. The answer to such a contention is that debtor has offered no evidence showing the impact of assumption of the collective bargaining agreement on the consolidated cases. While the saving of $2800.00 or any other amount of money by a debtor is beneficial in a reorganization, that is not enough to justify rejection of a collective bargaining agreement. We have no idea whatever whether rejection increases the likelihood of liquidation of the consolidated cases, nor do we have any basis for determining the impact of rejection on employees, other than that it might deprive them of $2800.00.

We will therefore deny debtor's application for approval of rejection of the Peterbilt collective bargaining agreement.