## In re DeLUCA DISTRIBUTING COMPANY, Debtor.

### Bankruptcy No. 583–702.

United States Bankruptcy Court, N.D. Ohio.

March 30, 1984.

Richard Goldsmith, Akron, Ohio, for the Union.

Joseph F. Hutchinson, Jr., Akron, Ohio, for debtor.

---

## FINDING AS TO COLLECTIVE BARGAINING AGREEMENT

**H.F. WHITE, Bankruptcy Judge.**

The debtor in possession, DeLuca Distributing Company (debtor), moves this court for a determination of whether it is bound by a collective bargaining agreement with Local 348 of the Teamsters Union (Union). The debtor argues that the collective bargaining agreement cannot be enforced against it. The court disagrees and finds that the debtor is a party to, and is bound by, the agreement in question.

The court heard the debtor's motion on March 5, 1984. The pertinent facts are not in dispute. The controversy essentially concerns the ability of a debtor in possession to enter into a post-petition collective bargaining agreement without the court's approval.

### FINDING OF FACT

1. The debtor is a wholesale beer distributor whose principal place of business is located in the City of Akron, Ohio.

2. The debtor is a member of a multi-employer bargaining unit known as the Summit County Brewers and Distributors Association (Association). The debtor's employees have been represented by the Teamsters Union for a long period of time.

3. In February 1981, the Union and the Association executed a collective bargaining agreement entitled "Agreement" (Exhibit A). This Agreement was effective June 1, 1980 through May 31, 1983. Article XXXIII of the Agreement provides as follows:

ARTICLE XXXIII. TERMINATION.
This Agreement shall become effective June 1, 1980, as above stated, be and continue in full force and effect until May 31, 1983, and this Agreement shall continue in full force and effect from year to year thereafter unless written notice of desire to cancel or terminate this Agreement is served by either party upon the other at least sixty (60) days prior to the annual expiration date of any subsequent year thereafter.

4. On March 28, 1983, Dan F. Darrow, the Secretary-Treasurer of the Union, sent written notice, (Exhibits B and B-1), to the debtor and the other Association members, of the Union's intention to terminate the Agreement.

5. The Union and the Association held negotiations on a new collective bargaining agreement in March and April 1983. On or about May 1, 1983, the Union members approved a list of proposals which Mr. Darrow presented to the Association on May 2, 1983. The Union proposals included various concessions including a freeze in wages (see Exhibits D, E, F, and N). On May 3, 1983 the Association met and determined that it needed clarification on three points. The Association authorized Tom LaRose to meet with the Union representative and to bind the Association to a collective bargaining agreement with the Union provided he could obtain satisfactory clarification and resolution of the three matters of concern. At 6:00 p.m., May 6, 1983, Mr. LaRose met with Mr. Darrow and resolved the matters of concern. They shook hands and agreed they had a contract.

6. At 1:14 p.m., May 6, 1983 the debtor filed its petition under Chapter 11 of the Bankruptcy Code with this court. This petition was executed on May 5, 1983.

7. George L. DeLuca, president of the debtor, did take part in the negotiations prior to the filing of the Chapter 11 petition. Mr. DeLuca attended the Association meeting on May 3, 1983. On that date he knew of the debtor's serious financial problems.

8. The debtor did not disclose, to either the Union or the other Association members, its financial difficulties. The debtor never attempted to withdraw from the Association.

9. The new collective bargaining Agreement between the Union and the Association (New Agreement) was not reduced to a final written form until January 1984. The New Agreement (Exhibit O) is effective from June 1, 1983 through May 31, 1986.

10. Up to the present time, the debtor has complied with all of the provisions of the New Agreement. The "over-the-road" clause does not apply to the debtor because the debtor does not employ over-the-road drivers.

11. The debtor filed this motion on January 19, 1984. Debtor's counsel stated that debtor did not challenge the New Agreement earlier because the debtor wanted to avoid a strike during the peak summer months for sale of beer.

12. No creditors of the debtor have objected to the New Agreement, nor have any creditors objected to the lack of notice concerning the New Agreement.

### ISSUE

The issue is whether the debtor has the authority to enter into a post-petition collective bargaining agreement without obtaining the court's approval.

### DISCUSSION OF LAW

At the outset it should be noted that the debtor is not seeking to reject a collective bargaining agreement. Thus, the court is not concerned with a factual determination of whether the collective bargaining agreement burdens the estate. The court is confronted instead with an essentially legal determination of whether the debtor is bound by the collective bargaining agreement negotiated between the Union and the Association. Whether the collective bargaining agreement burdens the estate is irrelevant.

Although the Union and the Association did not reduce their agreement to writing until January 1984, the court finds that the parties had a binding contract before that date. Section 8(d) of the National Labor Relations Act (NLRA), 29 U.S.C. section 158(d), states, in pertinent part:

to bargain collectively is ... the negotiation of an agreement, or any question arising thereunder, and the execution of a written contract incorporating any agreement reached if requested by either party, but such obligation does not compel either party to agree to a proposal or require the making of a concession:

Courts have held, under this provision, that it is an unfair labor practice to refuse to execute a written collective bargaining agreement once a final agreement has been reached. *H.J. Heinz Co. v. NLRB*, 311 U.S. 514, 61 S.Ct. 320, 85 L.Ed. 309 (1941); *Garrett Railroad Car v. NLRB*, 683 F.2d 731 (3d Cir.1981); *Cutter Laboratories*, 265 NLRB 78 (1982).

In the present case there is no dispute that the Union and the Association reached a final and complete agreement on May 6, 1983. Indeed, counsel for the debtor admits this in his post-hearing brief. Counsel emphasizes, however, that the agreement was reached after the debtor filed its petition. Counsel argues that the debtor cannot enter into a post-petition collective bargaining agreement without the bankruptcy court's approval.

It is clear that absent the debtor's Chapter 11 petition, the debtor would be bound by the New Agreement negotiated on its behalf by the Association. *Charles D. Bonanno Linen Service, Inc. v. N.L.R.B.*, 454 U.S. 404, 102 S.Ct. 720, 70 L.Ed.2d 656 (1982). In this case the Supreme Court held that an employer attempting to withdraw from a multi-employer collective bargaining unit commits an unfair labor practice by refusing to execute the collective bargaining agreement to which the union and the multi-employer bargaining unit have agreed. The court did note that an employer may withdraw from a multi-employer bargaining unit under certain prescribed conditions. Id. at 410–11. The conditions for withdrawal are irrelevant to this case, however, because it is undisputed that the debtor never attempted to withdraw from the Association.

It is also clear that a debtor in possession is generally required to adhere to the N.L.R.A. *National Labor Relations Board v. Bildisco and Bildisco*, —— U.S. ——, 104 S.Ct. 1188, 79 L.Ed.2d 482, 11 B.C.D. 564 (1984); *In re Brada Miller Freight System, Inc.*, 702 F.2d 890 (11th Cir.1983). As the Supreme Court stated in *Bildisco, supra*, —— U.S. at ——, 104 S.Ct. at 1196:

Not only is the debtor-in-possession under a duty to bargain with the union under § 8(a)(5) of the NLRA, 29 U.S.C. § 158(a)(5), see post. at 18–19, but the national labor policies of avoiding labor strife and encouraging collective bargaining, id § 1, 29 U.S.C. § 151, generally require that employers and unions reach their own agreements on terms and conditions of employment free from governmental interference. See e.g. *Howard Johnson Co. v. Hotel Employees*, 417 U.S. 249 [94 S.Ct. 2236, 41 L.Ed.2d 46] (1974); *NLRB v. Burns Security Services*, 406 U.S. 272, 282–294 [92 S.Ct. 1571, 1574, 32 L.Ed.2d 61] (1972). The Bankruptcy Court need step into this process only if the parties' inability to reach an agreement threatens to impede the success of the debtor's reorganization.

The debtor's post-hearing brief does not address the concerns of our national labor policy. Instead, the debtor rests its argument on various provisions of the Bankruptcy Code.

By filing its Chapter 11 petition the debtor automatically became a debtor in possession under 11 U.S.C. section 1101.[1] As a debtor in possession, the debtor, for the most part, stands in the shoes of the trustee.[2] The court has the authority to limit or condition the rights and powers of a debtor in possession. 11 U.S.C. section 1107(a). In the present proceedings, though, the court has not acted to limit the authority of the debtor. Thus, upon the filing of the Chapter 11 petition, the debtor, as a debtor in possession, had all the rights and powers of a Chapter 11 trustee.

A Chapter 11 trustee is authorized, pursuant to 11 U.S.C. section 1108, to operate the debtor's business.[3] The trustee is not required to obtain a court order to operate the debtor's business. Indeed, under section 1108 the court may exercise only the negative power of prohibiting the trustee from operating the debtor's business.

■ The authority to operate the debtor's business necessarily includes the concomitant discretion to exercise reasonable judgment in ordinary business matters. *In re Columbia Motor Express, Inc.*, 33 B.R. 389 (D.C.M.D.Tenn.1983); *In re Thrifty Liquors, Inc.*, 26 B.R. 26, 9 BCD 1387, (Bkrtcy.Mass.1982); *Allied Technology, Inc. v. R.B. Brunneman & Sons, Inc. (In re Allied Technology, Inc.)*, 25 B.R. 484 (Bkrtcy.S.D.Ohio 1982). The discretion to act with regard to ordinary business matters without prior court approval is at the heart of the trustee's powers. The statutory source for the trustee's authority in this matter is found at 11 U.S.C. section 363(c)(1), which provides:

> If the business of the debtor is authorized to be operated under section 721, 1108, or 1304 of this title and unless the court orders otherwise, the trustee may enter into transactions, including the sale or lease of property of the estate, in the ordinary course of business, without notice or a hearing, and may use property of the estate in the ordinary course of business without notice or a hearing.[4]

Since the debtor is a debtor in possession, section 363 applies equally to it. Furthermore, this court has not limited the debtor's powers under section 363(c)(1).

1. Section 1101(1) of Title 11 provides:
   In this chapter—(1) 'debtor in possession' means debtor except when a person that has qualified under section 322 of this title is serving as trustee in the case;

2. Section 1107(a) of Title 11 provides:
   Subject to any limitations on a trustee under this chapter, and to such limitations or conditions as the court prescribes, a debtor in possession shall have all the rights, other than the right to compensation under section 330 of this title, and powers, and shall perform all the functions and duties, except the duties specified in sections 1106(a)(2), (3), and (4) of this title, of a trustee serving in a case under this chapter.

3. Section 1108 of Title 11 provides: "Unless the court orders otherwise, the trustee may operate the debtor's business".

4. Pursuant to 11 U.S.C. section 103(a), a Chapter 11 trustee is authorized to exercise the rights and powers specified in Chapter 3, including section 363, of the Bankruptcy Code.

Thus, the debtor is limited only by the language of section 363(c)(1).

■ The pivotal limitation under this section is that the transaction in question must be "in the ordinary course of business". The debtor argues that, as a matter of law, a collective bargaining agreement is not a transaction in the ordinary course of business.

Although not binding on this court, it is interesting to note that the National Labor Relations Board disagrees with the debtor's position. In *Sealift Maritime, Inc.,* 265 NLRB 154, 9 BCD 1386 (1982) a three-member panel of the Board expressly held that a debtor's authority to operate its business pursuant to 11 U.S.C. sections 1107(a) and 1108 encompasses the authority to enter into collective bargaining agreements in the ordinary course of business without the bankruptcy court's approval. This case was before the board on the petition of a rival union to serve as the collective bargaining representative for the employees of a Chapter 11 debtor. In reaching its decision the Board also noted that the agreement executed by the debtor was "a slightly modified version of a contract already sanctioned by [the bankruptcy] court". 9 BCD at 1387.

This court agrees with the result reached in *Sealift Maritime, Inc., supra.* The facts in that case differ from the facts in this case, however. Also, it appears that no bankruptcy court has yet decided this issue.[5] Therefore, the court finds that a more extended analysis is required.

The debtor cites *Local Joint Executive Board, AFL–CIO v. Hotel Circle, Inc.,* 613

F.2d 210 (9th Cir.1980) in support of its position. In *Hotel Circle,* the Ninth Circuit held that a receiver under Chapter XI of the Bankruptcy Act of 1898 did not have the authority to enter into a modified collective bargaining agreement with the debtor's employees. Although *Hotel Circle* may have been a proper statement of the law under the former Act, the Court finds that much of its reasoning is inapplicable under the present Bankruptcy Code.

Under the former Act the trustee or the debtor in possession had to obtain prior court approval before either could operate the debtor's business.[6] By the very terms of the Act, the authority to operate the debtor's business was "subject to the control of the court". This is no longer the case under the Bankruptcy Code. As has been mentioned above, pursuant to 11 U.S.C. sections 1107(a) and 1108, the debtor in possession has the authority to operate the debtor's business without obtaining prior court approval.

As the court in *Hotel Circle* realized, the Bankruptcy Act contemplated a high degree of judicial supervision over the debtor's estate. *Hotel Circle,* 613 F.2d 216. Judicial intervention into the daily administration of bankruptcy cases under the former Act was often criticized as fostering a "bankruptcy ring". See e.g. H.R. 95–595, 95–96 95th Cong., 1st Sess. (1977), U.S. Code Cong. & Admin.News 1978, p. 5787. An important purpose of the new Bankruptcy Code was to remove the bankruptcy judge from the administrative duties of bankruptcy cases. *In re Wirik,* 3 B.R. 539, 543 (Bkrtcy.E.D.Va.1980) citing H.R. 95–

---

**5.** One case, *Local Joint Executive Board, AFL–CIO v. Hotel Circle, Inc.,* 613 F.2d 210 (9th Cir. 1980) did address this issue under the Bankruptcy Act of 1898. Other than the decision by the National Labor Relations Board in *Sealift Maritime, Inc.,* however, no court has addressed this issue under the new Bankruptcy Code enacted by the Bankruptcy Reform Act of 1978.

**6.** Section 343 of the Bankruptcy Act, former 11 U.S.C. section 743, which applies to Chapter XI cases, provides:

The receiver or trustee, or the debtor in possession, shall have the power, upon authorization by and subject to the control of

the court, to operate the business and manage the property of the debtor during such period, limited or indefinite, as the court may from time to time fix, and during such operation or management shall file reports thereof with the court at such intervals as the court may designate.

Rule 11–23, which applies to Chapter XI cases provides: "The court may authorize the trustee, receiver, or debtor in possession to conduct the business and manage the property of the debtor for such time and on such conditions as may be in the best interest of the estate".

595, *supra.;* S.R. 95–989, 95th Cong., 2nd Sess. 15 (1978). The bankruptcy court under the new Bankruptcy Code no longer exercises the close, strict control over case administration which was the norm under the Bankruptcy Act.

Much of the reasoning in *Hotel Circle* stems from the bankruptcy court's administrative role under the former Act. This court finds that the passage of the new Bankruptcy Code vitiates the support upon which *Hotel Circle* rested. In short, *Hotel Circle* is not a persuasive statement of the present law.

The debtor also cites *Bildisco, supra,* in support of its position that it has no authority to enter into a post-petition collective bargaining agreement without the bankruptcy court's approval. The short answer to this is that *Bildisco* is inapposite to the facts of the present case. In *Bildisco,* the Supreme Court considered the proper standard under which a bankruptcy court should consider a debtor's motion to reject a *pre-petition* collective bargaining agreement. Court approval of a debtor's assumption or rejection of a *pre-petition* collective bargaining agreement is explicitly required by the Bankruptcy Code.[7] Neither *Bildisco* nor the Bankruptcy Code explicitly require a debtor to obtain court approval to enter into a *post-petition* collective bargaining agreement.

The court also finds that it would be inappropriate to stretch the holding in *Bildisco* to the present case. The above-cited passage from *Bildisco* indicates that employers and unions are encouraged to reach their own agreements free from governmental or judicial interference. *Bildisco, supra.,* 52 U.S.L.W. at 4272. The debtor has voluntarily entered into the post-petition collective bargaining agreement and it would be natural for the union to assume that the debtor would comply with this agreement. This court finds that the Supreme Court in *Bildisco* did not require

bankruptcy court approval to enter into this agreement. Therefore, this court cannot be used as a vehicle by the debtor to escape an agreement which it made voluntarily.

The court concludes, therefore, that neither *Bildisco* nor *Hotel Circle* require court approval of a debtor's post-petition collective bargaining agreements. The debtor's reliance on those cases is misplaced. No cases have been found which support the debtor's position. The alleged necessity of court approval must be found, if at all, in the language of 11 U.S.C. section 363(c)(1).

This court's decision ultimately rests upon its construction of the phrase "ordinary course of business". This court will follow the construction formulated by the court in *In re James A. Phillips, Inc.,* 29 B.R. 391, 394 (D.C.S.D.N.Y.1983):

> The touchstone of 'ordinariness' is thus the interested parties' reasonable expectations of what transactions the debtor in possession is likely to enter in the course of its business. So long as the transactions conducted are consistent with these expectations, creditors have no right to notice and hearing, because their objections to such transactions are likely to relate to the bankrupt's chapter 11 status, not the particular transactions themselves. Where the debtor in possession is merely exercising the privileges of its chapter 11 status, which include the right to operate the bankrupt business, there is no general right to notice and hearing concerning particular transactions. To preclude such transactions, interested parties must apply to the Bankruptcy Court for relief from the stay, 11 U.S.C. section 362(d)(1), or for conversion or dismissal of the chapter 11 petition, 11 U.S.C. section 1112(b).

The New Agreement between the Association and the Union does not affect the rights of creditors in the property of the

---

7. Section 365(a) of Title 11 provides: "Except as provided in sections 765 and 766 of this title and in subsections (b), (c), and (d) of this section, the trustee, subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor". A collective bargaining agreement is, of course, an executory contract for the purposes of section 365.

debtor's estate. It sets forth the conditions of employment to which labor and management have agreed. Given our national labor policy of encouraging collective bargaining agreements and avoiding labor strife, see *Bildisco, supra.; John Wiley & Sons, Inc. v. Livingston*, 376 U.S. 543, 84 S.Ct. 909, 11 L.Ed.2d 898 (1964), the court finds that the reasonable expectation of creditors is that the debtor will enter into collective bargaining agreements. The debtor's history of union representation of employees supports this conclusion. Such an agreement is often in the best interest of creditors since it helps to avoid the disruption of the debtor's business. This very point was conceded by debtor's counsel when he admitted that the debtor did not challenge the New Agreement earlier because the debtor wanted to avoid a strike.

Furthermore, the court notes that no creditors have objected to the New Agreement or the lack of notice. Although this silence is not dispositive, it may indicate that the creditors themselves did not feel it was their position to object to the contract.

Only the debtor has objected to the New Agreement. Yet the debtor voluntarily entered into the New Agreement. The debtor's representative knew of the debtor's financial position, yet never attempted to withdraw from the Association. The debtor has accepted the benefits of labor peace provided by the New Agreement; it must accept the burdens also. Having been authorized by this court to operate its business and having entered into a collective bargaining agreement, the debtor cannot now claim that it lacked authority.

The court cites with approval the comments of Judge Stewart in *In re Isis Foods, Inc.*, 19 B.R. 329, 330–31 (Bkrtcy.W. D.Mo.1982), aff'd. 27 B.R. 156 (W.D.Mo. 1982):

> Thus, for the court initially to grant the chief executive officer this unqualified power to operate the business and the necessary power to make agreements to pay expenses as they currently arise and then, later, to refuse to enforce those agreements according to their clear and admitted terms would be a fraud upon those who are encouraged under the aegis of the bankruptcy court to do business with a chapter 11 debtor. The proposition is too fundamental that the bankruptcy court should not and cannot make itself a party to such a fraud. And such would stultify the purpose and intent of the foregoing provisions of the modern bankruptcy law, which is to encourage the rehabilitation of an honest chapter 11 entity, rather than to permit that entity to victimize those who attempt to fulfill the purpose of rehabilitation by doing business with the chapter 11 debtor. If the agreement were not enforced, the word would rapidly go forth that no person might safely do business with a chapter 11 entity, regardless of the assurances given him by that entity, and all the rest of the provisions of that chapter would accordingly become an unusable dead letter.

The court finds, therefore, that where the debtor's employees have continually been covered by a collective bargaining agreement, a new collective bargaining agreement is a transaction in the ordinary course of business under 11 U.S.C. section 363(c)(1). As such it does not require notice and a hearing; nor does it require court approval. The court also finds that the debtor voluntarily became bound by the New Agreement and that the debtor has accepted the benefits thereunder. Equity dictates that the debtor is estopped from now claiming that it is not bound by the New Agreement.