**In re MT. CARMEL ENTERPRISES, INC., Debtor.**

**SIMON AND SIMON, an Ohio Partnership, Creditor,**

v.

**MT. CARMEL ENTERPRISES, INC., Debtor.**

**Contested No. A.**
**Related Case No. 1–84–03031.**

United States Bankruptcy Court, S.D. Ohio, W.D.

March 8, 1985.

William T. Bartlett, Cincinnati, Ohio, for creditor.

Arthur J. Schuh, Cincinnati, Ohio, for debtor.

**DECISION AND ORDER ON MOTION FOR RELIEF FROM STAY**

BURTON PERLMAN, Bankruptcy Judge.

In this Chapter 11 case, a secured creditor of debtor, Simon and Simon, (hereinafter "creditor"), moves to have the stay which arose by reason of 11 U.S.C. § 362 lifted so that it may proceed against its collateral. Debtor resists the motion on grounds, first, that there is an executory contract involved which it has a right to assume pursuant to 11 U.S.C. § 365(a) and (b). In the alternative, debtor contends that creditor is adequately protected, the claimed adequate protection being by way of an equity cushion.

Debtor is in the business of operating a night club named San Antonio Rose located in Mt. Carmel, Ohio. Creditor sold the business to debtor, its secured position having arisen in connection with the sale. A closing on the sale occurred May 29, 1984.

The purchase price was $130,000.00. Debtor paid $50,000.00 down and gave a promissory note for $80,000.00 to creditor. The promissory note called for payments of $1,779.56 per month beginning July 10, 1984, to be paid out July 10, 1988. An interest rate of 12% was provided. The promissory note was secured by "all fixtures and equipment and all items used in connection with the operation of "San Antonio Rose" at 555–B Cincinnati-Batavia Pike, Cincinnati, Ohio 45244, including but not limited to the good will, name and all other property of every kind and description owned and/or controlled by the debtor in connection with said business including and and (sic) all rights and/or equities accruing to debtor by reason of the issuance of permits to the debtor by the Ohio Department of Liquor Control."

In connection with the sale the parties entered into a Management Agreement whereby debtor could operate the business with the benefit of the liquor license, though the liquor license stood in the name of the creditor. The Management Agreement is a common subterfuge utilized in connection with the transfer of businesses of this type so that the purchaser may operate the business during the period that the liquor license is in the process of being transferred, for that process generally consumes a considerable period of time. While debtor made application to the Ohio Board of Liquor Control for a transfer of the liquor license at about the time of the sale of the business, the license was not in fact transferred until January 1985. In the meantime, because debtor was failing to make payments as required by the promissory note and because of its perception of a deterioration in the business, creditor, pursuant to a provision in the Management Agreement, sent debtor a letter of cancellation of the agreement which was received by debtor November 10, 1984.

Payments on the promissory note were made from July 1984 through October 1984. A partial payment of $500.00 was accepted by creditor on November 5, 1984. Debtor subsequently tendered another check in the amount of $579.00, but creditor did not accept it.

Further, as part of the sale of the business, the lease for the premises occupied by the business were assigned to the purchaser. Debtor thereby became obligated to pay rent in the amount of $1,900.00 per month. No payment on the lease or of taxes was made by debtor after the October 1984 rent was paid.

The facts thus are simple. The record before us is silent as to whether the club was a thriving business at the time of transfer to debtor, but it is clear that by the fall of 1984, within a very few months after the acquisition by debtor, debtor was unable to continue the payments which it had agreed to make on its promissory note to creditor and in addition had stopped paying rent to the landlord. While there was no direct testimony on the subject at the hearing, it is fair to infer that things were not going well with the business. There was testimony on behalf of creditor that the failure to make payments on the obligations of the business was accompanied by very bad practices in the operation of the business and deterioration of the furniture and equipment at the premises. In these circumstances, creditor lost no time before trying to retrieve the business and took action to this end in the state court. Debtor thereupon at the beginning of December 1984 responded by filing this Chapter 11 case. Creditor contends that it should not be deterred from securing the relief to which it deems itself entitled because of the bankruptcy proceeding.

■ The Bankruptcy Code at 11 U.S.C. § 362(g) provides with regard to burden of proof on a motion such as that before us, that the creditor has the burden of proof on the issue of debtor's equity and property, while the debtor has the burden of proof on all other issues. The battleground on which the present controversy is being played out is § 362(d)(1), not § 362(d)(2). In the latter statutory provision the question of debtor's equity in property is relevant, while it is not per se in the former.

Debtor therefore has the burden of proof on all of the questions with which we are here dealing. The first of these is debtor's contention that the agreement between the parties was executory and is subject to being assumed by debtor. Specifically, while debtor agrees that the sale of the business was concluded on the closing date, there remained open the Management Agreement, and somehow this rendered the entire transaction executory. We cannot agree with this view.

The flavor of the Management Agreement may be deduced from the following language in the offer to purchase the business by debtor:

> That a management contract be used to allow the Buyers to operate the business during the liquor license transfer. This management contract, to be the standard form supplied by Terrance R. Monnie, Escrow attorney, and recognized by the Department of Liquor Control.

Thus, the Management Agreement was merely a convenient device to allow a purchaser to operate a business following the purchase of an establishment depending on a liquor license prior to the time that the license could be formally transferred to the purchaser. There can be no doubt that the liquor license was an essential asset of the club being sold by creditor to debtor, and we deem it immaterial to the present proceeding that it took some time for completion of the transfer to the purchaser to occur. Upon the conclusion of the sale of the business on May 29, 1984, we are satisfied that the transaction was no longer executory, applying normal bankruptcy criteria to the term "executory." See, *In re Total Transportation*, 37 B.R. 904 (Bankr. S.D.Ohio 1984); *In re Biron, Inc.*, 23 B.R. 241 (Bankr.S.D.Ohio 1982). Having concluded that the transaction between the parties was not executory, we find that debtor's first line of defense to creditor's present motion is without merit.

■ We proceed then to the question of adequate protection. Two specific varieties of adequate protection are prescribed at 11 U.S.C. § 361(1), (2), periodic cash payments, and additional or replacement lien respectively. Debtor does not propose either of these species of adequate protection. Instead, debtor urges that there is an equity cushion sufficient to insulate creditor from loss during the interim period until a plan is proposed. Equity cushion has come to be commonly relied upon as adequate protection. See, *In re Mr. D. Realty Company*, 27 B.R. 359, 364 (Bankr.S.D.Ohio 1983); *In re Curtis*, 9 B.R. 110, 112 (Bankr.E.D. Pa.1981). In support of its contention, debtor offered the testimony, first, of one who held himself out to be a prospective purchaser of the business. His offer was in the amount of $100,000.00. We do not accept this evidence as any indication of fair market value of the business, the criterian which is to be applied. See, *In re Roe Excavating*, No. 1–84–01952, (Bankr.S.D. Ohio Sept. 7, 1984). At best, the offeror's proposal is one for a work-out. It was not arrived at by a valuation process, but rather by recognizing the various obligations of the business, placing a value on each of them, and from the total formulating a proposal. That this process is merely a bargaining tool, and not evidence of value, is clear from the fact that one of the components of the offer is the amount to be paid to the present creditor. The claim of that creditor is in the vicinity of $80,000.00, yet the proposal assigns to creditor, with no indication whatever that creditor would find it acceptable, the amount of $41,-000.00.

In addition, in support of its position, debtor adduced the testimony of a person experienced in the night club field. His testimony was sketchy at best. He offered the opinion asserted to be based upon his general experience, that regardless of the condition of a facility, presumably so long as there was a roof, running water and utilities, it would be worth in the vicinity of $100,000.00. While this witness asserted that he had had occasion to value a number of properties, no evidence of any sale was

offered. We assign but limited value to this testimony.

Creditor also offered opinion evidence as to the value of the business. Creditor's witness was a commercial realtor with significant experience. He offered the opinion that the hard assets including inventory were worth $45,000.00. To this he added $10,000.00 for the liquor license and $20,000.00 for any other asset, making a total of $75,000.00 for the business. Again, while the witness testifying to these matters indicated that he had made appraisals in a number of other establishments, no evidence of comparable business values were offered.

The appraisal of property always raises difficult questions because one is not dealing with certainty, but rather with the speculative. Among the difficulties in such cases for the court is the inevitability of the production by the attacking party of a low valuation, and of the resisting party, of a high valuation. In view of these commonalities in cases involving appraisals, we will not in this case, because it is unnecessary, reach a hard and fast conclusion as to a value of the business known as San Antonio Rose. It is unnecessary because, even given the value contended for by debtor, no sufficient equity cushion is present. The evidence shows that upon the sale of San Antonio Rose from creditor to debtor, a commission to the broker in the amount of $10,000.00 was paid. A like expense must be anticipated upon any further sale. Clearly the expenses of sale reduce the valuation presented by debtor below a point where adequate protection to creditor is present.

Accordingly, we hold that cause has been shown for the lifting of the § 362 stay by reason of the failure of debtor to make scheduled payments on its promissory note to creditor, and there is a lack of adequate protection for creditor. We therefore order that the stay be lifted so that creditor may proceed to enforce its security agreement.

SO ORDERED.