In re **ILLINOIS–CALIFORNIA EXPRESS, INC.**, a **Nebraska Corporation d/b/a ICX, Inc., Debtor.**

**ILLINOIS–CALIFORNIA EXPRESS, INC., a Nebraska Corporation d/b/a ICX, Inc., Appellant,**

v.

**TEAMSTERS NATIONAL FREIGHT INDUSTRY NEGOTIATING COMMITTEE, Appellee.**

Civ. A. No. 85–K–488.
Bankruptcy No. 84–B–01927–M.

United States District Court,
D. Colorado.

May 7, 1987.

---

See also, Bkrtcy., 50 B.R. 232.

Stephen G. Smith, Steven Zimmerman, Denver, Colo., for Warren Braucher, Trustee.

T. Edward Icenogle, Denver, Colo., for debtor, Ill.-Cal. Express.

John A. Criswell, Englewood, Colo., Barbara S. Mehlsack, New York City, for appellee.

## MEMORANDUM OPINION AND ORDER

KANE, District Judge.

### I.

### INTRODUCTION

The issue in this bankruptcy appeal is the efficacy of a voluntary renegotiation by the debtor-in-possession, Illinois-California Express ("ICX"), and the appellee, National Teamsters Negotiating Committee ("Union"), of their collective bargaining agreement in the course of the Chapter 11 case, where the debtor-in-possession has ceased operations, coverted to Chapter 7 while there are outstanding amounts due under the agreement to the employees who worked post-petition.

Appellant, the trustee in the debtor's Chapter 7 case, contends that because the debtor-in-possession did not obtain prior court approval, the claims of the employees

for services rendered post-petition under the agreements are no better than general unsecured claims.[1] The trustee has estimated that liquidation of the estate will not yield enough to pay pre-petition employee priority claims under § 507(a)(3) of the Code.

The bankruptcy judge ruled that: (1) Appellants' post-petition renegotiation of its labor agreement and assumption of its existing labor contract as modified, without prior court approval, was proper; (2) The agreements in effect between the debtor-in-possession, ICX, and the appellee, the union, ceased to be executory contracts as of the date ICX ceased its operations and converted its Chapter 11 Reorganization case to Chapter 7 Liquidation case rendering those contracts thereafter not subject to rejection by the trustee in the Chapter 7 case; and, (3) Any amounts remaining unpaid under the agreements and accrued as a result of the post-petition services of the employees are a Chapter 11 cost of administration. I affirm.

## II.

### BACKGROUND

ICX was an interstate trucking company and signatory to the Teamsters National Master Freight Agreement and agreements supplemental thereto. ICX filed its Chapter 11 Reorganization Petition on April 25, 1984. During the period of the Chapter 11 Reorganization, the Union and ICX negotiated for modification of the Teamsters' National Master Freight Agreement.

This matter reached the bankruptcy court upon a motion for approval of contract modification and for authority to assume executory contract filed by ICX on June 21, 1984. The parties sought court approval of a post-petition wage concession agreement which ICX negotiated with the Union and which was ratified by its employees. The notice of motion stated the motion would be approved automatically by the court after July 16, 1984, provided there were no objections to the modification and assumption of executory contract and no motion requesting a hearing by an interested party on or before July 12, 1986.

The notice of motion was given to the Creditors' Committee and other parties in interest. Neither a motion requesting a hearing, nor an objection to the motion, were ever filed with the bankruptcy court by any party, including the trustee.

In the interim, on June 29, 1984, ICX converted its Chapter 11 case to a Chapter 7 case. Warren D. Braucher was appointed Chapter 7 trustee on that date. On August 1, 1984, the bankruptcy court, *sua sponte*, ordered a hearing on the motion for approval of contract modification and authority to assume executory contract. Hearing was held on November 16, 1984. On November 15, 1984, the trustee filed a joint stipulation as to certain facts which had been agreed upon by the trustee and the Union. At the hearing, appearances and arguments were made by ICX and the union in support of the motion. The trustee opposed the motion. No creditors appeared in opposition to the motion.

On November 23, 1984, the court issued its order approving the agreements, finding that: (1) the entering into of the agreements by the debtor-in-possession, ICX, and the Union, was done in the ordinary course of business; (2) the agreements between ICX and the Union ceased to be executory as of June 29, 1984, when ICX ceased operations and converted to Chapter 7, therefore, after that date, they were no longer subject to rejection by the trustee; (3) the amounts remaining unpaid under the agreements constitute Chapter 11 costs of administration and the agreements served as the basis for the filing of a Chapter 11 claim of administration by the Union on behalf of its members; (4) a formal claim on behalf of the Union and its

---

1. The Bankruptcy Code sets up an order of distribution for unsecured claims. Claims incurred in the administration of a debtor's Chapter 7 case, such as those of the trustee, are paid before claims incurred in the administration of the debtor-in-possession's Chapter 11 case, such as the claims of the employees in issue here.

Chapter 11 administration claims are paid before employee, tax, and other priority claims arising before the filing of the debtor's Chapter 11 Petition. 11 U.S.C. § 503(b)(1)(A); 11 U.S.C. § 507. General unsecured claims are paid only after all administration claims under § 503(b) and priority claims under § 507 are paid.

members may be filed at any time since the court considers the stipulation between the trustee and the Union to be an informal claim.[2] A notice of appeal from the order was filed by the Chapter 7 trustee on December 24, 1985.

## III.

## JURISDICTION AND STANDARDS FOR DECISION

Before I examine the merits of this appeal, I shall set forth the jurisdictional basis and standards for decision of this opinion.

I have jurisdiction to hear this appeal by virtue of the authority contained in 28 U.S.C. § 158(a):

"The district courts of the United States shall have jurisdiction to hear appeals from final judgments, orders, and decrees, ... of bankruptcy judges entered in cases and proceedings referred to the bankruptcy judges under section 157 of this title."

The manner of taking such an appeal is governed by Rules of Bankruptcy Procedure, Rule 8001(a):

"An appeal from a final judgment, order, or decree of bankruptcy judge to a district court ... shall be taken by filing a notice of appeal with the clerk of the bankruptcy court within the time allowed by Rule 8002."

Under Rules of Bankruptcy Procedure, Rule 8013, I may affirm, modify, reverse or remand a judgment of bankruptcy court. It has been stated many times, but most succinctly in *In re Hammons*, 438 F.Supp. 1143, 1147–48 (S.D.Miss.1977) *rev'd on other grounds*, 614 F.2d 399 (5th Cir.1980):

[The District] Court is bound to accept the Bankruptcy Judge's findings of fact unless they are clearly erroneous. Similarly, due regard in this context must be given to the lower court's opportunity to hear firsthand the testimony of the witnesses. However, this same presumption does not apply to conclusions of law, and this Court may make an independent examination and determination of the ultimate legal conclusions to follow from the facts. *In re McCoy*, 330 F.Supp. 533, 534–35 (D.Kan.1971)....

The "clearly erroneous" standard was explained by the Supreme Court in *Comm. v. Duberstein*, 363 U.S. 278, 80 S.Ct. 1190, 4 L.Ed.2d 1218 (1960), wherein the Court stated:

A finding is "clearly erroneous" when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. [citation omitted]. The rule itself applies also to factual inferences from undisputed basic facts ...'

"*Accord, Inland Sec. Co., Inc. v. Kirshner*, 382 F.Supp. 338, 344 (W.D.Mo. 1974)."

The issues on appeal in the instant case do not involve disputed facts, they involve only conclusions of law; therefore, the instant case is subject to *de novo* review. *In re Comer*, 723 F.2d 737 (9th Cir.1984); *In re McCoy, supra.*

## IV.

## CONCLUSIONS OF LAW

Appellant urges the reversal of the order of the bankruptcy order on two grounds: (1) Without a formal order by the bankruptcy court, a debtor-in-possession cannot assume or reject an executory contract pursuant to Section 365(a) of the United States Bankruptcy Code; and, (2) If the debtor-in-possession has not assumed or rejected an executory contract pursuant to Section 365(a) of the United States Bankruptcy Code, the trustee, upon conversion of the Chapter 11 Reorganization to a Chapter 7 Liquidation, may assume or reject the executory contract pursuant to section 365(d) of the United States Bankruptcy Code. Appellant further argues upon rejection of the executory contract, the damages to the employees covered by the contract, if any, are measured by the reasonable value of the services to debtor-in-possession before the

---

**2.** The trustee has not appealed from part four of the bankruptcy order. Accordingly, that issue is not before me.

possession of the executory contract. Further, the damages, if any, should be treated as general unsecured claims against the estate.

I shall discuss each of these arguments in turn.

### A. *Necessity of a Formal Approval from the Bankruptcy Court.*

■ The trustee contends pursuant to Section 365(a) of the United States Bankruptcy Code, formal court approval is required for the debtor-in-possession or trustee to assume or reject an executory contract in a Chapter 11 Reorganization. In this instance, no court order approving the modification and assumption of the agreement with the Teamsters was entered or could be entered because of the conversion of the Chapter 11 Reorganization to a Chapter 7 Liquidation and the vesting of all authority over the estate of the debtor in the trustee.

Title 11 U.S.C. § 363(c)(1) of the Bankruptcy Code, provides explicit statutory authority for the debtor-in-possession to enter into transactions in the ordinary course of business without notice and hearing.[3] This discretion to act with regard to ordinary business matters without prior court approval is at the heart of the trustee's powers. *In re DeLuca Distributing Company*, 38 B.R. 588, 591 (B.Ct.N.D.Ohio 1984) (citations omitted).

> The court in *DeLuca, supra,* stated:
>
> Given our national labor policy of encouraging collective bargaining agreements and avoiding labor strife ..., the Court finds that the reasonable expectation of creditors is that the debtor will enter into collective bargaining agreements. The debtor's history of union representation of employees supports this conclusion. Such an agreement is often in the best interests of creditors since it helps to

avoid the disruption of the debtor's business.

*In re DeLuca, supra,* at 594.

In the instant case the benefit to other creditors is acknowledged. The debtor-in-possession obtained the uninterrupted services of the Teamsters employees in the post-petition period which created almost $6 million of gross revenues.

In *DeLuca, supra,* the court explains the difference in the result had the case been decided under the Bankruptcy Act instead of the newly enacted Bankruptcy Code:

> Under the Act the trustee or debtor-in-possession had to obtain prior court approval to operate the debtor's business; this is no longer the case under the Code ... [Also,] an express and important purpose of the Code reforms was to remove the bankruptcy judge from the administrative duties of bankruptcy cases.

*Id.* at 592.

Thus, there is no requirement for a formal approval from the bankruptcy court. Accordingly, the bankruptcy court did not err in holding the debtor's post-petition renegotiation of its labor agreement and assumption of its pre-existing labor contract as modified, without prior court approval, was proper. The propriety of such a ruling is especially supported in the instant case given the collective bargaining relationship of the parties dating back almost to the origins of the company (some 30 years).

Lastly, the Supreme Court in *NLRB v. Bildisco*, 465 U.S. 513, 104 S.Ct. 1188, 1196–97, 79 L.Ed.2d 482 (1984) stated:

> [T]he national labor policies of avoiding labor strife and encouraging collective bargaining ... generally require that employers and unions reach their own agreements on terms and conditions of employment free from governmental interference ...
>
> The bankruptcy court need step into the process only if the parties' inability to reach an agreement threatens to im-

---

**3.** 11 U.S.C. § 363 provides:
> If the business of the debtor is authorized to be operated under section 721, 1108, 1304, 1203, or 1204 of this title and unless the court orders otherwise, the trustee may enter into

transactions, including the sale or lease of property of the estate, in the ordinary course of business, without notice or hearing, and may use property of the estate in the ordinary course of business without notice or hearing.

pede the success of the debtor's reorganization. (citations omitted).

For these reasons, the appeal must be denied with respect to this issue. The bankruptcy judge's ruling was not "clearly erroneous."

### B. *Debtor's Collective Bargaining Agreement as an Executory Contract vis-a-vis its Conversion to Chapter 7.*

■ Section 365(a) of the Code applies only to executory contracts of the Debtor, 11 U.S.C. § 365(a).[4] In an instructive case, the Fourth Circuit has noted:

The Code nowhere defines "executory." Examination of the Code's legislative history provides little help. It reveals only that Congress, aware of the imprecision of the term, intended executory contracts generally to include those "on which performance remains due to some extent on both sides." H.R.Rep. No. 595, 95th Cong., 1st Ses. 220 (1977), reprinted in 1978 U.S.Code Cong. & Ad.News 5787, 5844.

Congress thus ratified the pre-code practice, also uniformly followed by courts construing 365(a), of relying on professor Vern Countryman's definition of executory contracts. See Countryman, Executory Contracts in Bankruptcy: Part I, 57 Minn.L.Rev. 439, 450–62 (1973). Countryman defines an executory contract as one:

"Under which the obligations of both the bankrupt and the other party to the contract are so far unperformed that the failure of either to complete the performance would constitute a material breach excusing the performance of the other." *Id.* at 460.

*Gloria Manufacturing Corp. v. ILGWU,* 734 F.2d 1020, 1021 (4th Cir.1984).

In two decisions under the Bankruptcy Act, the Tenth Circuit has held that a contract is executory where "neither party has completely performed and the obligations of each remain ... complex" *King v. Baer,* 482 F.2d 552, 557 (10th Cir.1973), *citing Workman v. Harrison,* 282 F.2d 693, 699 (10th Cir.1960).

In the instant case, the debtor's labor agreements ceased to be executory as of June 29, 1984, when the debtor-in-possession ceased its trucking operations and terminated its employees. As of the cessation of operations, there could be no future performance under the contract. The Union and the employees had fully performed their obligations. All that remained was the past due obligation of the debtor-in-possession to pay severance pay and other monetary benefits which accrued under the contracts.

In *In re Total Transportation Services,* 37 B.R. 904, 906–07 (B.Ct.S.D. Ohio 1984), which I find persuasive, the court held:

If the employer ceases operation of the facility, there can be no future performance by either the employer or union members under the collective bargaining agreement of such obligations. Thus, while continued operation of the business is not directly the bargained for performance of the collective bargaining agreement, it is an essential condition to future performance by both parties.

*Id.* at 906–907.

The bankruptcy court did not err. The decision is affirmed with respect to this issue.

### C. *Remaining Unpaid Amounts Under the Agreements as Chapter 11 Costs of Administration.*

■ The severance pay to which the employees are entitled under the Concessions Agreement, was consideration and an inducement for the post-petition agreement of the Union employees to supply services to the debtor-in-possession at considerably reduced compensation. The holding of the bankruptcy court—that claims arising out of that Concessions Agreement are Chapter 11 costs of administration—is in accord with all of the decisions which have considered the status of severance pay. See *Bildisco, supra,* at 1199 ("should the debtor-in-possession elect to assume an executory contract, however it assumes the con-

---

4. 11 U.S.C. § 365(a) provides:
   Except as provided in sections 765 and 766 of this title and in subsections (b), (c), and (d) of this section, the trustee, subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor.

tract *cum onere* ... and the expense and the liabilities incurred may be treated as administrative expenses, which are afforded the highest priority in the debtor's estate, 11 U.S.C. § 503(b)(1)(A).").

As the First Circuit has stated:

If the Debtor-in-Possession had, induced employees to remain on the job, promised them that if discharged they would receive severance pay (even though based on prior practice), in that case the fact that the employees performed services post-petition would constitute the entire consideration necessary to support a claim of administration.

*In re Mammoth Mart, Inc.*, 536 F.2d 950, 955, n. 4 (1st Cir.1976).

The purpose of an administrative priority remains the same as it was under the Bankruptcy Act: That is to induce third parties to supply the goods and services necessary to facilitate rehabilitation of the debtor's business. *In the Matter of Jartran, Inc.*, 732 F.2d 584, 588 (7th Cir.1984). In the instant case, the employees' entire action in ratifying the Concessions Agreement and in working for the debtor-in-possession was based on the expectation of administrative priority in the event the debtor's rehabilitation effort failed. Thus, as a matter of statute, policy, and equity, the court was correct in finding that the Concessions Agreement serves as the basis for a Chapter 11 claim of administration for any unpaid amount arising under the agreement.

The trustee cites no authority for the proposition that the employees' claims for services rendered post-petition are no better than general unsecured claims. I shall not allow failing businesses to abuse the bankruptcy statutes and mislead workers by inducing them to continue working at a reduced wage while management knows all the while there will be a Chapter 7 Liquidation in the near future, thus relieving management of paying the reduced wage. Such abuse was not contemplated when the Bankruptcy Code was enacted and I shall not set a precedent for justifying such abuse should a business in the future attempt to soften the blow of an impending liquidation.

## V.

## CONCLUSION

IT IS THEREFORE ORDERED THAT the bankruptcy court's order is AFFIRMED.