630 F.2d 1370
 6 Bankr.Ct.Dec. 1061
 In re John Harry TRIGG and Pauline Van Hook Trigg, Debtors,
John Harry TRIGG and Pauline Van Hook Trigg, Debtors in
Possession, Sidney C. Skaar and Don C. Bell, II,
Co-Trustees, Plaintiffs-Appellants,
v.
The UNITED STATES of America, DEPARTMENT OF the INTERIOR,
BUREAU OF LAND MANAGEMENT by and Through Cecil D. ANDRUS,
its Secretary of the Interior, State of Wyoming, by and
through Albert E. King, its Commissioner of Public Lands,
and State of New Mexico, by and through Phil R. Lucero, its
Commissioner of Public Lands, Defendants-Appellees.
 No. 79-1862.
 United States Court of Appeals,
Tenth Circuit.
 Argued June 20, 1980.
Decided Sept. 15, 1980.
 
 Stuart D. Shanor, Roswell, N. M. (K. Douglas Perrin, Roswell, N. M., with him on brief) of Hinkle, Cox, Eaton, Coffield & Hensley, Roswell, N. M., for plaintiffs-appellants.
 Mary B. Guthrie, Asst. Atty. Gen., Cheyenne, Wyo. and Thomas H. Pacheco, Atty., Dept. of Justice, Washington, D. C. (James W. Moorman, Asst. Atty. Gen., Washington, D. C., R. E. Thompson, U. S. Atty., James B. Grant, Asst. U. S. Atty., Albuquerque, N. M., Dirk D. Snel, Atty., Dept. of Justice, Washington, D. C., John D. Throughton, Atty. Gen., Cheyenne, Wyo., with them on brief), for defendants-appellees.
 Before SETH, Chief Judge, and BREITENSTEIN and SEYMOUR, Circuit Judges.
 SEYMOUR, Circuit Judge.
 
 
 1
 John Harry Trigg and Pauline Van Hook Trigg are debtors-in-possession in a Chapter XI proceeding under the Bankruptcy Act of 1898, formerly codified at 11 U.S.C. §§ 701 et seq.[1] At issue on appeal are their rights to certain oil and gas leases issued to them by the United States Bureau of Land Management and the state of Wyoming. The district court, affirming the bankruptcy judge's decision, held that the leases automatically terminated when the debtors failed to tender timely rental payments. The court found nothing in the Bankruptcy Act to preclude this result.
 
 
 2
 On appeal, the debtors contest termination of the leases, contending that with the filing of the Chapter XI petition the automatic stay provision of Bankruptcy Rule 11-44, 11 U.S.C. App. Rule 11-44, precluded termination of their leasehold interests or that, in any event, the bankruptcy court should have fashioned equitable relief compelling continuation of the leases. We disagree and affirm the district court.
 
 
 3
 For many years the debtors have been engaged in the development and operation of oil and gas properties. From 1969 to 1975, they acquired approximately 146 oil and gas leases covering 102,000 acres of nonproducing properties in Colorado, Montana, New Mexico, Oklahoma, Utah, and Wyoming. Under both the federal and state leases at issue, the lessees were granted the exclusive right to drill for oil and gas on the leased acreage. In lieu of pursuing production, the lessees could retain the leases by paying an advance annual delay rental of 50 cents per acre. The lessees were not obligated to drill or pay. But each lease expressly provided that, absent production, failure to pay the advance annual rental on or before the anniversary date would automatically terminate the lease.
 
 
 4
 It is undisputed that there were no wells on the leased lands capable of producing oil and gas in paying quantities. Therefore, annual delay rentals were due and payable on the anniversary dates of the leases to keep them in force. From the inception of these leases until 1977, the debtors paid the delay rentals. In early 1977, the debtors experienced severe financial difficulties and, in an effort to achieve rehabilitation, filed a Chapter XI petition on April 20.
 
 
 5
 The groups of leases at issue had respective anniversary dates of June 1, July 1, August 1, and September 1. Instead of tendering the delay rentals necessary to keep the June leases in effect, the debtors filed an adversary proceeding in the bankruptcy court on June 21, 1977 seeking (1) an injunction to prevent termination of the leases and (2) a contempt order against the lessors for violating the automatic stay provisions of Rule 11-44(a). Three additional complaints were filed on or about the twentieth day after the anniversary dates of the July, August and September leases.
 
 
 6
 Because each lease had lapsed by its own terms before the debtors filed the four respective actions, the bankruptcy court concluded that "(i)t is one thing to prevent expiration and quite another to attempt to breath life back into something which has already died." Rec., vol. I, at 119. The district court agreed, and debtors appeal its order dismissing the four actions.
 
 I.
 The Automatic Stay Rule Is Inapplicable
 
 7
 Relying on Bankruptcy Rule 11-44(a), the debtors contend that the filing of their Chapter XI proceeding automatically stayed termination of the oil and gas leases. The purpose of Rule 11-44(a) is to protect and preserve property of the debtor. Nevertheless, its scope is not sufficiently broad to prevent termination of the leases here.
 
 
 8
 Bankruptcy courts are courts of limited jurisdiction, and "their power to act must be found expressly in the Bankruptcy Act." Riffe Petroleum Co. v. Cibro Sales Corp., 601 F.2d 1385, 1390 (10th Cir. 1979). Rule 11-44(a) provides:
 
 
 9
 "Stay of Actions and Lien Enforcement. A petition filed under Rule 11-6 or 11-7 shall operate as a stay of the commencement or the continuation of any court or other proceeding against the debtor, or the enforcement of any judgment against him, or of any act or the commencement or continuation of any court proceeding to enforce any lien against his property, or of any court proceeding, except a case pending under Chapter 10 of this title, for the purpose of the rehabilitation of the debtor or the liquidation of his estate."
 
 
 10
 The Supreme Court prescribed Rule 11-44 pursuant to 28 U.S.C. § 2075, which permits the promulgation of procedural rules for practice under the Bankruptcy Act. The enabling statute provides that the Bankruptcy Rules "shall not abridge, enlarge, or modify any substantive right." Id.
 
 
 11
 To determine the scope of Rule 11-44, we must construe the underlying substantive provisions of Chapter XI. The Advisory Committee's Note accompanying Rule 11-44 states that the rule "supplements and reinforces the policy of §§ 11a, 311 and 314 of the Act (sections 29(a), 711 and 714 of title 11)." Bankruptcy Rule 11-44, Advisory Committee's Note. These statutory provisions, inter alia, stay actions founded on dischargeable claims, authorize the stay of any other actions against the debtor, and authorize the stay of any act or proceeding to enforce any lien against the debtor's property. Id. See generally 14 Collier, Bankruptcy P 11-44.02 (14th ed. 1976). As was articulated in Fidelity Mortgage Investors v. Camelia Builder's, Inc., 550 F.2d 47, 51 (2d Cir. 1976), cert. denied, 429 U.S. 1093, 97 S.Ct. 1107, 51 L.Ed.2d 540 (1977): "It is difficult to conceive of a rule with a more apparent and certain meaning: after the Chapter XI petition has been filed, a debtor cannot be sued."
 
 
 12
 The only portion of Rule 11-44(a) even arguably applicable to this action is the command that the Chapter XI "petition . . . shall operate as a stay of the commencement or the continuation of any . . . other proceeding against the debtor . . . ."[2] Here, the debtors' failure to tender the annual rental caused the leases to lapse automatically by their own terms. See Phillips Petroleum Co. v. Curtis, 182 F.2d 122 (10th Cir. 1950). No "proceeding" was involved within the meaning of Rule 11-44(a). Cf., Good Hope Refineries, Inc. v. Benavides, 602 F.2d 998, 1002 (1st Cir.) cert. denied, 444 U.S. 992, 100 S.Ct. 523, 62 L.Ed.2d 421 (1979) (automatic termination of an oil and gas lease for nonpayment of delay rental does not constitute a "proceeding" within the meaning of Bankruptcy Act § 11(e), 11 U.S.C. § 29(e)).
 
 
 13
 Applying Rule 11-44(a) to stay the automatic termination of a lease caused by the default of the debtors would enlarge the substantive rights provided in Bankruptcy Act §§ 11(a), 311, 314, 11 U.S.C. §§ 29(a), 711, 714. The bankruptcy judge and the district court correctly held Rule 11-44(a) inapplicable to this case.
 
 II.
 Post-Termination Relief Is Not Authorized
 
 14
 The debtors also contend that the bankruptcy court should have prevented termination or reinstated the leases. We disagree.
 
 
 15
 As a court of equity, a bankruptcy court may issue an injunction to prevent impairment of its jurisdiction or to enforce the provisions of the Act. Continental Illinois National Bank & Trust Co. v. Chicago, Rock Island & Pacific Ry., 294 U.S. 648, 675, 55 S.Ct. 595, 605, 79 L.Ed. 1110 (1935). See generally 8 Collier, Bankruptcy P 3.23 (14th ed. 1978). This inherent equitable power permits a bankruptcy court, in proper circumstances, to restrain cancellation of a contract in order to preserve the continuation of the debtor's business. See, e. g., Queens Boulevard Wine & Liquor Corp. v. Blum, 503 F.2d 202 (2d Cir. 1974); In re Traders Compress Co., 381 F.Supp. 789 (W.D.Okla.1973); In re Merrit Lumber Co., 336 F.Supp. 325 (E.D.Pa.1971).
 
 
 16
 In the present case, however, the debtors did not seek an injunction to prevent the termination of their leases until after the leases had lapsed by their own terms. Only then did the debtors file the four respective complaints against the lessors alleging the past due date of the rental payments, the amounts owing, the existence of the automatic termination provisions, and that "the debtors-in-possession . . . have not rejected any of these leases as executory contracts and do hereby affirmatively assume said leases." Rec., vol. I, at 31, 60, 79, 102.
 
 
 17
 A contract that provides for termination on the default of one party may terminate under ordinary principles of contract law even if the defaulting party has filed a petition under the Bankruptcy Act. See generally 8 Collier, supra, at P 3.15(4). This principle was recognized in Good Hope Refineries, Inc. v. Benavides, 602 F.2d at 1003:
 
 
 18
 "If the debtor has committed, or the trustee commits, an incurable breach, the trustee has no continuing rights under the contract. Cf. Matter of Gulfco Investment Corp., 520 F.2d 741 (10th Cir. 1975) . . . . It would be anomalous indeed if section 11(e), a provision dealing mainly with suits and claims by the trustee, could be used to alter contractual rights substantially where time is of the essence and the debtor or the trustee has defaulted. It would be even more anomalous if, in the case of an option contract, section 11(e) (which gives the trustee or debtor-in-possession 60 days to perfect certain rights of the debtor) allowed the trustee to procure a right that never existed and for which no consideration has ever been paid, i. e., the right to exercise an option long after its termination date."
 
 
 19
 There the debtor tendered a check on October 30, 1975 for the delay rental due November 8th on its oil and gas lease. The next day it filed a Chapter XI petition. The debtor's bank immediately set off its claims against the debtor's deposits so that the check was dishonored when it was presented for collection. On November 18th, the lessor refused as untimely a cashier's check tendered to pay the delay rentals. The bankruptcy court held that nothing in the Bankruptcy Act permitted the debtor-in-possession to cure the default. The First Circuit agreed and rejected the debtor's ultimate argument that the bankruptcy court possesses equitable jurisdiction to remedy this type of situation. Leases such as these do not work a forfeiture and hence the lessee is not entitled to equitable relief. Id.
 
 
 20
 In Schokbeton Industries, Inc. v. Schokbeton Products Corp., 466 F.2d 171 (5th Cir. 1972), a licensing agreement was terminated by the licensor upon 60 days' default in payment of royalties, even though the licensee had filed a Chapter XI petition during the 60-day grace period provided in the contract for curing the default. The bankruptcy court granted injunctive relief on the ground that the filing of the arrangement petition postponed the debtor's obligation to cure the default. The district court reversed, dissolving the injunction. The Fifth Circuit affirmed, stating:
 
 
 21
 "(A)bsent a concession of the referee's power to rewrite the contract between the parties, the grounds for termination here were as irreversible as those in each of the other cases. . . . The royalties remained unpaid. Debtor's rights under the licensing agreement evaporated upon receipt of the written notice of termination, and neither the mere filing of the arrangement petition nor the referee's order purporting to 'extend' the grace period for cure of the default nor a mystical combination of both could effect their recondensation.
 
 
 22
 ". . . .
 
 
 23
 ".... The filing of an arrangement petition under Chapter XI does not divest the debtor in possession of its contractual rights, but it likewise does not provide a blanket exemption from contractual obligations. Debtor's failure to satisfy those obligations justified Products' termination of the agreement."
 
 
 24
 Id. at 176-77.
 
 
 25
 In the present case, the debtors failed to satisfy their contractual obligation to make the delay rental payments on their oil and gas leases. The leases lapsed by their own terms. The bankruptcy court was powerless to rewrite those terms for the parties.
 
 
 26
 Nevertheless, the debtors could have reinstated the federal leases under the Mineral Leasing Act of 1920, 30 U.S.C. § 188(c), which the federal leases incorporate by reference. That act permits reinstatement under certain specified circumstances, provided the unpaid rental is paid or tendered within twenty days of the due date and a petition for reinstatement is filed with the Secretary of the Interior.[3] Here the debtors filed their complaints in the bankruptcy court within twenty days after the respective leases had terminated, but they neither tendered the amount of unpaid lease rental payments nor petitioned the Secretary for reinstatement.
 
 
 27
 Like a trustee in bankruptcy, a debtor-in-possession under Chapter XI "cannot accept the benefits of an executory contract without accepting the burdens as well." Schokbeton Industries, Inc. v. Schokbeton Products Corp., 466 F.2d at 175. The debtors here could not obtain reinstatement of the terminated leases without making the lease payments.
 
 
 28
 "It is conceivable that a system of bankruptcy law might compel the nonbankrupt party to a contract, the performance of which is incomplete as to both contracting parties, to continue performing while for the counterpart refer him to a mere dividend out of the estate. Needless to say, such a solution is neither wise from the viewpoint of commercial credit, nor fair from the viewpoint of equity. It neglects one of the basic principles of equity, mutuality of obligation and performance. What § 70(b) (affirmance of executory contracts) actually proposes to do is precisely to secure this continued mutuality wherever it is felt to be of greater benefit to the estate to proceed in accordance with the bankrupt debtor's plans rather than to freeze his commercial relations as of the filing date. The price for securing the potential margin of benefit to the estate is high. It is nothing short of complete mutuality, that is, assumption by the estate of the bankrupt's liabilities, not as a matter of granting a distributive share, but by performance in full, just as if bankruptcy had not intervened."
 
 
 29
 4A Collier, Bankruptcy P 70.43(2), pp. 523-24 (14th ed. 1978) (emphasis added). We recognized this principle of mutuality in P. M. G. Corp. v. Hogan, 520 F.2d 741, 744 (10th Cir. 1975), where we said, "if the trustee decides to adopt the contract, it will have to make the payments that it has missed with interest." Accord, In re D. H. Overmyer Co., 510 F.2d 320 (2d Cir. 1975) (refusing to apply Queens Boulevard, 503 F.2d 202, because lessee was behind in rent payments).
 
 
 30
 Since the debtors failed to tender the delay rentals and to properly petition for reinstatement of the federal leases, the terminated leases could not be reinstated. The general equitable powers of the bankruptcy court cannot create for the debtors a right to property they have lost through an incurable default.
 
 
 31
 Affirmed.
 
 
 
 [1]
 The Bankruptcy Act of 1898 was repealed by the Bankruptcy Reform Act of 1978, Pub.L.No. 95-598, sec. 401, 92 Stat. 2682, generally effective October 1, 1979. Id. sec. 402. The original petition was filed in this Chapter XI action on April 20, 1977, and judgment was rendered in these adversary proceedings on January 11, 1979. Therefore, this case is governed by the old Act. See id. sec. 403, 92 Stat. 2683
 
 
 [2]
 According to the Advisory Committee's Note, the reference in Rule 11-44(a) to "other proceeding" was for the purpose of including a pending arbitration proceeding within the scope of the automatic stay. Bankruptcy Rule 11-44, Advisory Committee's Note; See also 14 Collier, supra, at P 11-44.02(3)
 
 
 [3]
 The Wyoming leases, also expressly providing for automatic termination upon nonpayment of annual delay rental, contained no provision for reinstatement