**In re B & K HYDRAULIC COMPANY, Debtor.**

**Robert S. HERTZBERG, Trustee, Plaintiff,**

v.

**LOYAL AMERICAN LIFE INSURANCE COMPANY, Defendant.**

**Bankruptcy Nos. 88–0540–R, 86–02934–R.**

United States Bankruptcy Court, E.D. Michigan, S.D.

Oct. 25, 1989.

Robert S. Hertzberg, Birmingham, Mich., for plaintiff.

James Murphy, Detroit, Mich., for defendant.

## MEMORANDUM OPINION

STEVEN W. RHODES, Bankruptcy Judge.

### I.

The issue in this adversary proceeding is whether the defendant, Loyal American Life Insurance Company, is liable on a life insurance policy following the death of the insured. Loyal American denies liability on the ground that the policy lapsed by its own terms when the trustee, Robert Hertzberg, failed to make the required post-petition premium payments. Hertzberg contends that the insurance contract is an executory contract that Loyal American is prohibited from terminating the contract without the approval of the Bankruptcy Court. The parties have filed cross-motions for summary judgment.

The specific facts giving rise to this issue are not in dispute, and are as follows:

On May 28, 1985, Loyal American issued a life insurance policy to the debtor, B & K Hydraulic Company. The policy provided life insurance coverage of one million dollars upon the life of Thomas Beaty, Jr., the president of B & K. B & K is owner and beneficiary of the policy. The policy required premium payments annually.

On June 17, 1986, an involuntary bankruptcy petition was filed against B & K.

On August 11, 1986, B & K filed a consent to a Chapter 11 proceeding.

In June of 1987, Beaty sought to modify the payment terms of the policy because B & K was experiencing financial difficulties. At that time the terms were changed to permit monthly payments due on the twenty eighth day of each month, with a thirty one day grace period. The policy contained a provision stating, "If the premium is not paid at the end of the grace period, the policy will lapse...."

Through October of 1987, B & K made the monthly premium payments. However, B & K did not make the payments for either November or December of 1987.

On December 11, 1987, Hertzberg was appointed Chapter 11 trustee.

On January 4, 1988, Beaty died.

Hertzberg contends that under 11 U.S.C. § 365 and *N.L.R.B. v. Bildisco & Bildisco,* 465 U.S. 513, 104 S.Ct. 1188, 79 L.Ed.2d 482 (1984), the insurance policy is an executory contract and that he is permitted to assume the contract at any time through confirmation, unless the Court fixes an earlier date upon motion. He further contends that until he assumes the contract, he has no obligation to perform under the contract and that therefore Loyal American is prohibited from asserting that the failure of payment resulted in a termination of the contract.

Loyal American contends that when the payment due on November 28, 1987 was not made, the grace period extended coverage for thirty one days, through December 29, 1987. Because no payment was made by that date, Loyal American contends that the policy lapsed on that date. Because Beaty died after that date, Loyal American denies liability.

### II.

#### A.

There is a group of cases holding that when the time duration of an executory contract expires before the Court considers the issue of assumption or rejection, the issue is moot. For example, in *Gloria Manufacturing Corporation v. Interna-*

*tional Ladies' Garment Workers' Union,* 734 F.2d 1020 (4th Cir.1984), a collective bargaining agreement expired after the debtor filed a motion to reject the contract, but before the Bankruptcy Court heard the motion. The Bankruptcy Court, the District Court, and the Court of Appeals held that the debtor's motion to reject became moot when the agreement expired. The Court of Appeals stated, "Once a contract has expired on its own terms, there is nothing left for the trustee to reject or assume." The Court further stated, "Because the contract expired before Gloria was able to obtain court approval for its attempt at rejection, the contract was no longer executory." 734 F.2d at 1022.

In *In re Pesce Baking Co., Inc.,* 43 B.R. 949 (Bankr.N.D.Ohio 1984), the court reached the same result on similar facts, adding, "The critical date for determining the executory nature of a contract is the date on which the bankruptcy court considers the debtor's application." 43 B.R. at 957.

The logic of these decisions flows from the generally accepted view that an executory contract is one under which substantial performance remains on both sides. *Gloria Manufacturing,* 734 F.2d at 1022; *Pesce Baking,* 43 B.R. at 957. *See* Countryman, *Executory Contracts in Bankruptcy,* 57 Minn.L.Rev. 439, 460 (1973); *N.L.R.B. v. Bildisco & Bildisco,* 465 U.S. 513, 522 n. 6, 104 S.Ct. 1188, 1194 n. 6, 79 L.Ed.2d 482 (1984); *In re Jolly (Chattanooga Memorial Park v. Still),* 574 F.2d 349, 350–51 (6th Cir.1978), *cert. denied,* 439 U.S. 929, 99 S.Ct. 316, 58 L.Ed.2d 322 (1978); and *In the Matter of B. Siegel Co.,* 51 B.R. 159, 161 (Bankr.E.D.Mich.1985). By definition, a contract which has expired by its own terms does not require any further performance by either party and is therefore not an executory contract.[1]

This rule is summarized in 2 *Collier on Bankruptcy,* ¶ 365.02 at 365–16 (15th ed. 1989):

Finally, for section 365 to apply, the contract or lease must be in existence. If the contract or lease has expired by its own terms or has been terminated prior to the commencement of the bankruptcy case, then there is nothing left for the trustee to assume or assign.

### B.

Several cases have applied this principle in circumstances where the assumption or rejection issue becomes moot for a reason not related to the time duration of the contract. For example in *In re Total Transportation Service, Inc.,* 37 B.R. 904 (Bankr.S.D.Ohio 1984), the debtor terminated its operations, and then moved to reject its collective bargaining agreement. The court denied the motion, holding that because there could be no further performance by either party under the contract in any event, the agreement was no longer executory. 37 B.R. at 906.

In *In re Trigg (Trigg v. United States),* 630 F.2d 1370 (10th Cir.1980), the debtor's oil and gas lease provided that absent production, the failure to pay advance annual rent would automatically result in termination of the lease. The debtor failed to pay the post-petition advance rental payments. Instead, the debtor filed an adversary proceeding after the due dates, requesting an injunction to prevent termination of the lease. The Court of Appeals affirmed the decisions of District Court and Bankruptcy Court which had denied relief, and held, "A contract that provides for termination on the default of one party may terminate under ordinary principles of contract law even if the defaulting party has filed a petition under the Bankruptcy Act." The Court concluded:

In the present case, the debtors failed to satisfy their contractual obligation to make the delay rental payments on their oil and gas leases. The leases lapsed by their own terms. The bankruptcy court

---

1. Similarly, in *In re Nashville White Trucks (White Motor Corp. v. Nashville White Trucks, Inc.),* 5 B.R. 112 (Bankr.M.D.Tenn.1980), the court held that after a franchise agreement expired by its own terms on January 29, 1980, the debtor had no further interest in the agreement.

was powerless to rewrite those terms for the parties.
630 F.2d at 1374.

Although *Trigg* was decided under the Bankruptcy Act, its holding is still valid. *In re P.I.N.E.*, 52 B.R. 463 (Bankr.W.D. Mich.1985) also involved oil and gas leases that terminated by their own terms when the debtor failed to make the required post-petition advance rental payments. Relying on *In re Trigg*, the court held that because leases had terminated, they were no longer executory, and the debtor could not assume and assign them under 11 U.S.C. § 365 by simply curing the default. 52 B.R. at 465.

In *In re Government Securities Corporation (Camp v. National Union Fire Insurance Company of Pittsburgh Pa.)*, 101 B.R. 343 (Bankr.S.D.Fla.1989), a securities dealer blanket bond provided for termination as to any employee as soon as the insured learned of any dishonest or fraudulent act on the part of that employee. The court held that because the trustee had reported such an act before the sixty day time period for a motion to assume the contract under 11 U.S.C. § 365(d)(1), such a motion would have been moot. 101 B.R. at 350.

Another case reaching a similar result based on similar facts is *In re Intermet Realty Partnership (Intermet Realty Partnership v. First Pennsylvania Bank)*, 26 B.R. 383 (Bankr.E.D.Pa.1983). Therein, a land purchase option expired shortly after the petition was filed when the debtor failed to pay the contract price to renew the option. The court held that thereafter there was no executory contract that could be assumed. 26 B.R. at 388. *See also In re Continental Properties, Inc. (Travelodge International Inc. v. Continental Properties, Inc.)*, 15 B.R. 732 (Bankr.D.Hawaii 1981).

### C.

On the other hand, when an insurance policy is paid up, the Court will enjoin an insurance company's attempt to cancel the policy, even if the policy allows cancellation "at will." See, for example: *In re Garnas (Garnas v. American Family Mutual Insurance Co.)*, 38 B.R. 221, 223–24 (Bankr. D.N.D.1984); *In re Pester Refining Co. (Pester Refining Co. v. Insurance Company of North America)*, 58 B.R. 189, 192 (Bankr.S.D.Ia.1985); and *In the Matter of B. Siegel Co.*, 51 B.R. 159, 163–64 (Bankr. E.D.Mich.1985). Such an insurance policy is property of the estate under 11 U.S.C. § 541(a)(1), and the insurance company's attempt to cancel the contract violates the automatic stay under 11 U.S.C. § 365(a).

### III.

The Court concludes that the present case is analogous to *Gloria Manufacturing, Pesce Baking, Total Transportation, Trigg,* and similar cases, because as in those cases, the contract in this case terminated without any action by the non-debtor party. The Court concludes that this contract terminated on December 29, 1987, when the payment due on November 28, 1987, went unpaid. After that date there was no contract left to assume under 11 U.S.C. § 365.

The Court further concludes that this holding is not inconsistent with *N.L.R.B. v. Bildisco & Bildisco, supra.* In that case, the Supreme Court held that a collective bargaining agreement is not enforceable after a bankruptcy petition is filed, and that therefore the N.L.R.B. is precluded from filing unfair labor practice charges against the debtor for unilaterally changing the terms and conditions of employment. The court so held because, "the practical effect of the enforcement action would be to require adherence to the terms of the collective-bargaining agreement." 465 U.S. at 532, 104 S.Ct. at 1199.

Based on this holding, Hertzberg argues that the practical effect of allowing Loyal American to rely on the termination clause would be to require adherence to the contract payment obligations before assumption of the contract. But there is a crucial distinction. The action precluded by the court in *N.L.R.B. v. Bildisco & Bildisco* was a direct administrative enforcement action against the debtor, seeking to enforce the terms of a contract which under Section 365, the debtor was not obligated to per-

form. In contrast, Loyal American has undertaken no action to terminate the policy. It is on this ground that cases such as *Garnas, Pester,* and *B. Siegel* are distinguishable.[2]

It may be that the practical effect of Loyal American's position is that a trustee will have to make the contract payments to avoid termination of the contract by its own terms and to maintain the benefits of the contract. But that is perfectly normal in a Chapter 11 bankruptcy. Nothing in *N.L.R.B. v. Bildisco & Bildisco* suggests that a debtor can require performance without consideration. Rather, the Supreme Court stated:

> If the debtor-in-possession elects to continue to receive benefits from the other party to an executory contract pending a decision to reject or assume the contract, the debtor-in-possession is obligated to pay for the reasonable value of those services, *Philadelphia Co. v. Dipple,* 312 U.S. 168, 174, 61 S.Ct. 538, 541, 85 L.Ed. 651 (1941), which, depending on the circumstances of a particular contract, may be what is specified in the contract, *see In re Public Ledger,* 161 F.2d 762, 770–771 (CA3 1947). *See also In re Mammoth Mart, Inc.,* 536 F.2d 950, 954–955 (CA1 1976).

465 U.S. at 531, 104 S.Ct. at 1199.

The only authority that the Court could find in support of Hertzberg's position is this statement in Bordewieck, *The Postpetition, Pre–Rejection, Pre–Assumption Status of an Executory Contract,* 59 Am. Bankr.L.J. 197 (Summer, 1985):

> It was previously concluded that the non-debtor party may not validly terminate an executory contract because of the DIP's failure to cure a prepetition default. For the reasons just set forth, this conclusion is a corollary to the larger principle that the non-debtor party may

not validly terminate an executory contract when such termination is premised upon action or inaction by the DIP that would justify termination under applicable non-bankruptcy law. Accordingly, the non-debtor party should not be permitted to terminate an executory contract because of the DIP's failure to cure a postpetition default, or to exercise its right and take the appropriate steps to extend the contract for an additional period, or to exercise an option within a specified period, or to comply with other terms or conditions of the contract. A postpetition termination is effective only if it would have occurred despite any action or inaction on the part of the DIP.

*Id.* at 212–13.

This Court concludes that it simply cannot accept this statement as authoritative, for several reasons. First, the author admits that his conclusion on this point is not widely accepted, at least among his colleagues. *Id.* at 213 n. 59. Second and more importantly, the author cites no case authority for the proposition; rather the conclusion appears to be based upon a broad interpretation of *N.L.R.B. v. Bildisco & Bildisco* that does not take into account the distinction discussed above.

In the Court's view, the issue in determining whether a post-petition termination of an executory contract is proper is not whether the contract terminates despite any action or inaction on the part of the DIP. Such a test does not explain the holdings in *Total Transportation, Trigg, P.I.N.E., Government Securities,* and *Intermet Realty.* In each of these cases, the court denied relief to the debtor because the contract had terminated, even though the termination resulted from some action or inaction by the debtor.

Rather, the issue must be whether termination requires the non-debtor party to un-

---

**2.** For this same reason, it must also be held that the termination of the contract did not violate the automatic stay of 11 U.S.C. § 362(a); Loyal undertook no act to terminate the contract. *See Moody v. Amoco Oil Co.,* 734 F.2d 1200, 1212–13 (7th Cir.1984), *cert. denied,* 469 U.S. 982, 105 S.Ct. 386, 83 L.Ed.2d 321 (1984); *Johnson v. First National Bank of Montevideo, Minn.,* 719

F.2d 270, 276 (8th Cir.1983), *cert. denied,* 465 U.S. 1012, 104 S.Ct. 1015, 79 L.Ed.2d 245 (1984); *In re Anne Cara Oil Co. (Shell Oil Co. v. Anne Cara Oil Co., Inc.),* 32 B.R. 643, 647–48 (Bankr. D.Mass.1983); *In re Nashville White Trucks, Inc. (White Motor Corp. v. Nashville White Trucks, Inc.),* 5 B.R. 112, 120 (Bankr.M.D.Tenn.1980).

dertake some post-petition affirmative act. Only this test reconciles the cases discussed earlier.[3] When termination of the contract requires an affirmative act of the non-debtor party, the contract remains executory because such an act is stayed under 11 U.S.C. § 362(a). When termination occurs without any action by the non-debtor party, the contract is no longer executory and no longer subject to assumption or rejection.

Accordingly, the Court concludes that as of December 29, 1987, when the grace period expired, the policy lapsed and terminated, and there was no longer any contract for Hertzberg to assume. Therefore Section 365 provides no basis for any liability under the contract on the part of Loyal American.

The Court will enter an appropriate order denying Hertzberg's motion for summary judgment, granting Loyal American's motion for summary judgment and dismissing this adversary proceeding.

---

**3.** In their briefs, the parties also discuss *Moody v. Amoco Oil Co.,* 734 F.2d 1200 (7th Cir.1984) and *Counties Contracting and Construction Co. v. Constitution Life Insurance Co.,* 855 F.2d 1054 (3d Cir.1988). However, both of these cases involve the effect of a *pre-petition* default on 11 U.S.C. § 365, and are thus distinguishable. In resolving this issue, the Court discussed 11 U.S.C. § 108(b) at length, which by its terms is not applicable to the present case. *See also: In the Matter of McLouth Steel Corp. (Edwin C. Levy Co., Inc. v. McLouth Steel Corp.),* 20 B.R. 688 (Bankr.E.D.Mich.1982).