**In re J.E. ADAMS INDUSTRIES, LTD.**

**J.E. Adams Industries, Ltd., and Republic Credit Corporation I, Plaintiff,**

**v.**

**Aurora National Life Assurance Company, Defendant.**

**No. C00–190 MJM.**

United States District Court, N.D. Iowa, Cedar Rapids Division.

Sept. 28, 2001.

**810**

Thomas L. Fiegen, Fiegen Law Firm, Cedar Rapids, IA, for J.E. Adams Industries, Ltd.

Eric W. Lam, Moyer & Bergman, PLC, Cedar Rapids, IA, for Republic Credit Corporation I.

Jeffrey P. Taylor, Klinger Robinson McCuskey Cable, Cedar Rapids, IA, Thomas E. Patterson, Robert A. Holland, Mark E. Haddad, Sidley, Austin, Brown & Wood, Los Angeles, CA, for Aurora National Life Assurance Co.

## ORDER

MELLOY, District Judge.

The Bankruptcy Court for the Northern District of Iowa entered partial summary judgment in favor of co-plaintiffs J.E. Adams, Inc., and Republic Credit Corporation I (hereinafter Debtor). Aurora National Life Assurance Company (Aurora) appeals the decision in which the court held Aurora's cancellation of a "keyman" insurance policy held by J.E. Adams, Inc., violated the automatic stay imposed by 11 U.S.C. § 362(a)(3)[1]. For the following reasons, this court reverses the bankruptcy court's holding and remands the case for consideration of the remaining issues in Debtor's bankruptcy proceeding.

### I. Standard of Review

The court reviews de novo the bankruptcy court's conclusions of law. *In*

*re Commercial Millwright Service Corp.*, 245 B.R. 603, 606 (N.D.Iowa 2000). The bankruptcy court's findings of fact are reviewed for clear error. *In re Usery*, 123 F.3d 1089, 1093 (8th Cir.1997). Summary judgment was properly entered if, assuming all reasonable inferences favorable to the non-moving party, there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *In re Commercial Millwright Service Corp.*, 245 B.R. at 606. "'A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court is left with a definite and firm conviction that a mistake has been committed.'" *In re Hatcher*, 218 B.R. 441, 445–46 (8th Cir. BAP 1998) (quoting *Anderson v. Bessemer City*, 470 U.S. 564, 573, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985)).

### II. Facts

In March of 1988, J.E. Adams, Inc., purchased a whole life insurance policy (Policy), insuring its chief executive officer, Jack E. Adams. Debtor purchased the Policy from Executive Life Insurance Company (ELIC). However, in September of 1993, as a result of ELIC's insolvency, Aurora assumed the Policy. The Policy had an anniversary date of March 26 and Debtor made quarterly premium payments of $2,905.06. Debtor had a thirty-one day grace period if it did not make timely premium payments, after which provisions of the Policy dictated Debtor's and Aurora's rights and responsibilities. The Policy required Aurora to notify Debtor of approaching quarterly premium due dates if the Policy might terminate if payment was not received by the end of the

---

1. The court has jurisdiction to hear this appeal pursuant to 28 U.S.C. § 158(a)(1).

grace period. In addition to the grace period, the Policy had several provisions to prevent forfeiture of the Policy. The first was a Premium Default Provision which allowed the cash value in the Policy to automatically pay a quarterly premium if the Policy holder failed to pay the premium due at the expiration of the thirty-one day grace period. If the Policy had insufficient cash value to pay the missed premium, the Policy was converted from a whole life policy to a term life policy pursuant to a Nonforfeiture Option in the Policy.

Debtor filed a Chapter 11 bankruptcy petition on January 21, 1998, after which J.E. Adams operated the company as debtor-in-possession. Counsel for Debtor sent an overnight letter on December 17, 1998, nearly eleven months after the filing of the petition, notifying Aurora of the Chapter 11 filing. In addition, the letter requested a post-petition loan against the available cash value in the Policy. On December 22, 1998, Aurora loaned $65,802.67 to Debtor, the maximum amount available under the Policy. After the loan, the Policy had only enough cash value to pay one quarterly premium. Debtor did not pay the quarterly premium due on December 26, 1998, and at the expiration of the thirty-one day grace period, the remaining cash value in the policy was used to pay the premium pursuant to the Premium Default Option. Debtor was notified of this on March 6, 1999. On March 5, 1999, Aurora sent Debtor a notice advising Debtor of the upcoming quarterly premium payment due on March 26, 1999. Debtor did not pay the March 26, 1999, quarterly premium. However, because of the loan against the Policy taken out by the Debtor, and the fact the remaining cash value of the Policy was applied to the December 26, 1998, quarterly premium, the Policy had no remaining available cash to apply to the missed premium.

Aurora advised Debtor by way of letter on April 16, 1999, that the Policy would be converted from a whole life to a term life policy if the premium was not paid by the end of the grace period. On April 26, 1999, Aurora notified Debtor that the grace period had expired. Then, on June 3, 1999, Aurora notified Debtor the Policy was converted from a whole life to an extended term policy pursuant to the Nonforfeiture Option and that the Policy would expire on July 3, 1999. Debtor failed to make any payment on the Policy before the expiration of the Policy and consequently, the extended term coverage ended on July 3, 1999.

On July 9, 1999, Debtor sent Aurora a letter stating it had not received notice prior to the July 3, 1999, letter notifying Debtor of the cancellation of the policy. Debtor attempted to pay the amount of the last two quarterly premiums. The amount was insufficient to cover the overdue premiums. J.E. Adams died on December 9, 1999. The Bankruptcy Court confirmed Debtor's Chapter 11 plan on March 24, 2000. Debtor assigned its interest in the Policy to one of its creditors.

### III. Discussion

The issue before the court is whether the cancellation of the Policy violates the automatic stay imposed by Debtor's filing of a Chapter 11 petition. Debtor and co-plaintiff below, Republic Credit Corporation, assert that Aurora's notification letters constitute affirmative acts "to engineer the cancellation process of a life insurance policy purchased by [Debtor]," and that such acts are in violation of the automatic stay imposed by 11 U.S.C. § 362(a)(1) and (3). Debtor suggests that J.E. Adams did not assume the Policy and, consequently, Aurora's cancellation of the Policy is in violation of 11 U.S.C. § 365. Further, Debtor urges the court to uphold the bankruptcy

court's conclusion that 11 U.S.C. § 542(d) does not apply to the case at bar, and that 11 U.S.C. § 108(b) does not require J.E. Adams to have cured the default within the grace period provided for by the policy.

Aurora contends the automatic stay does not prevent a contract from expiring automatically by its terms, and that the notices provided by Aurora to Debtor were not affirmative acts within the meaning of the bankruptcy code. Aurora also urges the court to apply 11 U.S.C. § 542(d) to the cancellation of the policy. Additionally, Aurora contends that 11 U.S.C. § 108(b) prevents the automatic stay from indefinitely tolling the Policy's grace period.

### A. 11 U.S.C. § 362(a)

█ The automatic stay provision relevant to this appeal provides:

Except as provided in subsection (b) of this section, a petition filed under section 301, 302, or 303 of this title ... operates as a stay, applicable to all entities, of-(1) the commencement or continuation, including the issuance or employment of process, or a judicial, administrative or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title; ... (3) any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate[.]

11 U.S.C. § 362(a)(1) and (3). First, the court will address section 362(a)(1). The court notes the events in question surrounding the Policy arose post-petition: the loan against the policy, the Premium Default Option, the Nonforfeiture Option, and the cancellation of the Policy for nonpayment of the March 26, 1999, quarterly premium. Therefore, as Aurora points out, the events could not have occurred pre-petition because Debtor did not default on the Policy until after filing the Chapter 11 petition. *See Taylor v. First Federal Savings & Loan Ass'n of Monessen*, 843 F.2d 153, 153 (3rd Cir.1988) ("Further, the automatic stay is not intended to bar proceedings for post-petition claims that could not have been commenced before the petition was filed."). In addition, the cancellation of the policy is not a proceeding, but rather a natural event flowing from the terms of the Policy. *See In re Vacation Village Ltd. P'ship*, 49 B.R. 590, 593 (Bankr.N.D.Iowa 1984). As the *In re Vacation Village* court stated:

[Section] 362(a) stays an 'act,' or a 'proceeding,' or the 'enforcement' of a right. In a contract forfeiture situation, the contract vendor, once a notice of forfeiture has been served, need not act, proceed, or enforce in order to achieve forfeiture. In other words, nothing is expected or required from the contract vendor. On the other hand, it is the contract vendee who must act, proceed, or otherwise enforce its rights under the contract by curing.

*Id.* at 593 (citing *Johnson v. First Nat'l Bank of Montevideo*, 719 F.2d 270, 276 (8th Cir.1983)) (footnote omitted). Therefore, Section 362(a)(1) does not have the relevance Debtor suggests.

█ The court prefaces its discussion of section 362(a)(3) with a general principle the Eighth Circuit has announced: "The automatic stay provided for by section 362(a) does not enlarge the rights of individuals under a contract nor does it toll the running of time under a contract. It will not prevent the automatic termination of a contract by its own terms." *Hazen First State Bank v. Speight*, 888 F.2d 574, 576 (8th Cir.1989). This precept proscribes the court from reading beyond the statute

imposing the automatic stay and from rewriting the Policy. Debtor seeks to have Aurora insure J.E. Adams beyond the terms of the contract because Debtor has filed a bankruptcy petition: "A contract that provides for termination on the default of one party may terminate under ordinary principles of contract law even if the defaulting party has filed a petition under the Bankruptcy Act." *Trigg v. United States,* 630 F.2d 1370, 1374 (10th Cir. 1980). The holding Debtor seeks would allow Debtor the benefit of the Policy with none of the accompanying costs or risks. Debtor wants Aurora to continue a policy that Debtor has defaulted on and drained of its cash value.[2] That is not the purpose of the automatic stay, nor should it be its effect:

> The automatic stay is one of the fundamental debtor protections provided by the bankruptcy laws. It gives the debtor a breathing spell from his creditors. It stops all collection efforts, all harassment, and all foreclosure actions. It permits the debtor to attempt a repayment or reorganization plan, or simply to be relieved of the financial pressures that drove him into bankruptcy.

S.Rep. No. 95–989, at 54–55, *reprinted in* 1978 U.S.C.C.A.N. 5787, 5840–41; H.R.Rep. No. 95–595, at 340, *reprinted in* 1978 U.S.C.C.A.N. 5963, 6296–97.

■ Debtor makes the point that Aurora notified Debtor of the premium due date and that these notifications constitute affirmative acts on the part of Aurora to cancel the Policy in violation of the automatic stay. The court does not accept the finding by the bankruptcy court that Aurora's notice letters constitute affirmative acts in seeking to get property of the estate. The notice provision in the Policy states: "The Company will advise the Owner prior to the premium due date if this policy may terminate if the Premium is not received by the end of the Grace Period." (Appellant's Excerpt of Record, p. 55). The notices serve as a reminder that the Policy was still in effect and premiums were still due. The characterization of the notices as an attempt to get money from the estate is in error. The notices did not attempt to get money from the estate, nor did they cancel the Policy. The notices are required of Aurora pursuant to the terms of the Policy, and in effect, seek to prevent the situation Debtor is now in—claiming it did not know of the expiration and seeking the benefit of a lapsed Policy. Debtor's failure to pay the quarterly premium and to act according to the terms of the Policy cancelled the Policy.

■ In *In re B & K Hydraulic,* 106 B.R. 131 (Bankr.E.D.Mich.1989), the court was faced with a similar situation in which an insurance policy on the life of a corporate debtor's principal was cancelled, post-petition, due to nonpayment of a premium. Debtor attempts to distinguish *B & K Hydraulic* by noting that the insurer did not take action to terminate the policy.

---

2. It is worth noting that while J.E. Adams was acting as debtor-in-possession, J.E. Adams borrowed $65,802.67 from the policy. At the time, the Debtor had not defaulted on or forfeited the Policy. It is slightly disingenuous for Debtor, acting as debtor-in-possession, to borrow the maximum amount of cash value from the Policy in a post-petition loan and then to argue to the court it has not assumed the Policy. *See NLRB v. Bildisco,* 465 U.S. 513, 531, 104 S.Ct. 1188, 79 L.Ed.2d 482 (1984) ("If the debtor-in-possession elects to continue to receive benefits from the other party to an executory contract pending a decision to reject or assume the contract, the debtor-in-possession is obligated to pay for the reasonable value of those services, which, depending on the circumstances of a particular contract, may be what is specified in the contract.") (internal citations omitted). Consequently, Debtor's 11 U.S.C. § 365 argument is without merit.

The court assumes the action Debtor intimates is Aurora's notifying the Debtor of the cancellation. The facts of *B & K* do not specify if the insurer notified the debtor of the cancellation. However, it appears there was little time to do so as the insured died six days after the policy lapsed. *Id.* at 131. The *B & K Hydraulic* court concluded "that this contract terminated on December 29, 1987, when the payment due on November 28, 1987, went unpaid." *Id.* at 134. In the appeal of *In re B & K Hydraulic,* an unpublished opinion, the Sixth Circuit stated:

> A debtor or trustee cannot overlook payment of premiums and later claim that the insurance contract is extended and still enforceable despite its terms.

The same principle applies under the automatic stay provisions of § 362. The automatic stay applies to prevent the creditor from taking affirmative steps to forfeit or foreclose an interest or to collect a debt, but it does not normally impair the terms of contracts concerning expiration.

*In re B & K Hydraulic Co.,* 1991 WL 93191 (6th Cir.1991) (unpublished opinion). In the case at bar, the notices to the Debtor did not cancel, terminate, or cause the lapse of, the Policy. Further, it was error to characterize the notices as seeking possession of the Debtor's estate. It was Debtor's failure to make timely premium payments that led to the cancellation of the Policy.

The principle of this holding is consistent with Eighth Circuit case law as well as that of courts that have faced analogous, though not identical, facts. *See Hazen,* 888 F.2d at 576. The Seventh Circuit has stated:

> Section 362, which creates an automatic stay of certain creditor actions upon the filing of a petition in the bankruptcy court, does not help debtors here. The automatic stay does not toll the mere running of time under a contract, and thus it does not prevent automatic termination of the contract. Section 362 does not give a debtor greater rights in a contract. Thus, debtors cannot rely on section 362 to prevent termination of the contracts.

*Moody v. Amoco Oil Co.,* 734 F.2d 1200, 1213 (7th Cir.1984) (citations omitted). In *In re West Pine Construction Co.,* 80 B.R. 315, 324 (Bankr.E.D.Pa.1987), the court was faced with a situation where a debtor defaulted on a lease post-petition, and consequently, the lease, by its terms, expired automatically. *Id.* at 317. The court stated:

> There must clearly come a point in time when the parties to a lease are entitled to a legitimate expectation of finality in connection with their business dealings. It is clearly inequitable to permit a debtor to attempt to cure and remedy a contractual obligation that has already expired. To permit a debtor to attempt to assert rights under an already expired lease by resort to the equitable provisions of the Bankruptcy Code would undermine confidence not only in the certitude of contracts, but in the judicial system itself.

*Id.* at 324. The court's holding reflects a commitment to this principle and honors the terms of the Policy.

### B. 11 U.S.C. § 542(d)

Aurora contends that 11 U.S.C. § 542(d) permitted the expiration of the Policy. Section 542(d) provides:

> A life insurance company may transfer property of the estate or property of the debtor to such company in good faith, with the same effect with respect to such company as if the case under this title concerning the debtor had not been commenced, if such transfer is to pay a premium or to carry out a nonforfeiture

insurance option, and is required to be made automatically, under a life insurance contract with such company that was entered into before the date of the filing of the petition and that is property of the estate.

The bankruptcy court distinguished between what section 542(d) authorizes and what Debtor alleges. The statute authorizes the good faith transfer of estate property to pay premiums or to carry out nonforfeiture options. The Debtor contends the cancellation, and not the Nonforfeiture Option, violates the automatic stay. While the distinction is important, it is not dispositive of the issue. The automatic stay does not eviscerate the terms of the contract. Nor can the statute extend the life of the contract. To give effect to the grace period, the Premium Default Option, and the Nonforfeiture Option, but not the cancellation of the Policy by its agreed to terms would be to rewrite the Policy. The Policy, pursuant to its terms, including the grace period, the Premium Default Option, and the Nonforfeiture Option, provide a roadmap for the cancellation of the Policy. This does not entail any affirmative actions on the part of Aurora. The contract in the instant case was cancelled due to Debtor's failure to make premium payments. Cancellation of the policy was not effectuated through the notice letters to the Debtor, but rather through Debtor failing to make timely premium payments.

### C.  11 U.S.C. § 108(b)

█ Section 108(b) provides:

Except as provided in subsection (a) of this section, if applicable nonbankruptcy law, an order entered in a nonbankruptcy proceeding, or an agreement fixes a period within which the debtor or an individual protected under section 1201 or 1301 of this title may file any pleading, demand, notice, or proof of claim or loss, cure a default, or perform any oth-

er similar act, and such period has not expired before the date of the filing of the petition, the trustee may only file, cure, or perform, as the case may be, before the later of-(1) the end of such period, including any suspension of such period occurring on or after the commencement of the case; or (2) 60 days after the order for relief.

Section 108(b) is inapplicable to the situation before the court. This section might apply if the Debtor was in the grace period stipulated by the Policy and then filed the bankruptcy petition. The Policy grace period did not start until Debtor failed to pay the March 26, 1999, premium, nearly 15 months after the filing of the bankruptcy petition. The statutory grace period would have expired sixty days from the filing of the bankruptcy petition on January 21, 1998. In fact, Debtor did not notify Aurora that it had filed for bankruptcy until nearly eleven months had passed since the filing, and nine months since the expiration of the statutory grace period. Debtor failed to cure the default during the grace period provided for in the Policy. The Policy expired under its own terms, and not within the statutory grace period contemplated by section 108(b).

### ORDER

For the foregoing reasons, the decision of the bankruptcy court is REVERSED, and this case is remanded for consideration of the remaining issues in Debtor's Chapter 11 bankruptcy proceeding.