**In re Howard L. MARGULIS, Debtor.**

**No. 04–13395(SMB).**

United States Bankruptcy Court, S.D. New York.

April 12, 2005.

Leo Fox, Esq., New York, NY, for Debtor.

Wolff & Samson PC, Timothy R. Wheeler, Esq., Of Counsel, West Orange, NJ, for International Fidelity Insurance Company.

## OPINION OVERRULING OBJECTION TO CLAIM FILED BY INTERNATIONAL FIDELITY INSURANCE COMPANY

STUART M. BERNSTEIN, Chief Judge.

The International Fidelity Insurance Company (the "Claimant") filed Claim no. 10 in the sum of $791,113.81, plus costs, accrued interest and attorneys' fees (the "Claim"). The debtor objected to the claim relying on a pre-petition agreement that gave the debtor the option—which he

did not exercise—to pay a lesser amount in full satisfaction. The debtor argued, in substance, that the Claim was limited to the amount set forth in the parties' agreement. For the reasons that follow, the objection is overruled.

## BACKGROUND

The Claim is based on an indemnity agreement executed, *inter alia,* by the debtor and his former spouse on or about March 23, 2003.[1] The indemnity agreement related to surety bonds, aggregating several million dollars. I assume that the bonds were issued in connection with construction or renovation projects. In any event, the Claimant eventually sued the debtor and his ex-spouse in New Jersey state court to recover under the indemnity agreement. The complaint was not provided, but judging from the parties' subsequent settlement, I take it that the Claimant sought to recover approximately $800,000.00.

The parties reached a Settlement Agreement on November 13, 2003.[2] The debtor agreed to pay $140,000.00 on or before May 15, 2004 (six months later). (Settlement Agreement, at ¶2.) If he failed to make the payment when due, he was granted an automatic ten days to cure his default, but the Claimant did not have to provide a notice of default. (*Id.,* at ¶4.) The debtor also agreed to deliver a Consent Judgment for the Claimant's benefit in the sum of $791,113.81, less any payments made, plus costs, accrued interest and reasonable attorneys' fees. (*Id.,* at ¶7.) The Claimant's attorneys agreed to

---

1. A copy of the indemnity agreement is attached to the Claimant's proof of claim. The proof of claim is attached to the *Response of International Fidelity Insurance Company to Debtor's Objections to Proof of Claim,* dated Mar. 29, 2005 (ECF Doc. # 53).

2. A copy of the Settlement Agreement is also attached to the proof of claim. Portions appear to have been redacted, and other parts contain handwritten interlineations. Neither party has challenged the authenticity of the document, or suggested that the redactions or interlineations are material to the dispute.

hold the Consent Judgment in escrow, (*id.*), return it to the debtor if he made the payments, (*id.*, at ¶ 7A), or enter and enforce it if he did not.[3] (*Id.*, at ¶ 6.) In short, the Claimant held a contingent claim in the sum of $791,113.81, which the debtor could discharge by paying $140,000.00 on or before May 25, 2004.

The original due date, May 15, 2004, fell on a Saturday. The parties agree that the due date for the payment of the settlement sum was automatically extended to Monday, May 17, 2004.[4] The debtor filed his chapter 11 petition on that day.

■ The Claimant filed a proof of claim for the full amount of the debt stated in the Consent Judgment.[5] The debtor filed this objection maintaining that the settlement agreement fixed the claim at $140,000.00. (*Objections to Claims of International Fidelity Insurance Company (Claim No. 10)("IFIC"), dated Mar. 3, 2005 ("Objections"),* at ¶ 4)(ECF Doc. # 51.) He reasoned that he was not in default as of the petition date, and the automatic stay barred the Claimant "from giving notice of default and thereby commencing the default period which would have resulted in the entry of a Consent Judgment." (*Id.*, at ¶¶ 5–6.) Furthermore, the Claimant's right under the Settlement Agreement to seek the higher amount in the event of a default was a prohibited *ipso facto* clause under § 365(e). (*Id.*, at ¶¶ 7–8.) Finally, the Consent Judgment was six times more than the settlement amount, and constituted an unenforceable penalty. (*Id.*, at ¶ 10.)

## DISCUSSION

### A. The Automatic Stay

■ Generally, the automatic stay prevents entities from *taking action* to commence or continue a proceeding to collect a pre-petition debt, 11 U.S.C. § 362(a)(1), interfere with property of the estate, 11 U.S.C. § 362(a)(2), (3), (4), or, in some cases, interfere with property of the debtor. 11 U.S.C. § 362(5), (6). Conversely, the automatic stay does not toll or restrain the mere passage of time. Thus, it does not stop a contract from terminating by its own terms as long as the termination does not depend on a post-petition "act." *Moody v. Amoco Oil Co.*, 734 F.2d 1200, 1213 (7th Cir.1984). For example, where the debtor defaults under a contract prior to bankruptcy, and the non-debtor party serves a termination notice that takes effect without further action at a future date, the filing of a bankruptcy petition between the giving of notice and termination date does not toll or stay the termination. *Id.; In re Policy Realty Corp.*, 242 B.R. 121, 126 (S.D.N.Y.1999); *I.T.T. Small Bus. Fin. Corp. v. Frederique*, 82 B.R. 4, 6 (E.D.N.Y.1987).

■ While the debtor concedes this general rule, he maintains that it only applies

---

**3.** Notwithstanding the escrow provisions in the Settlement Agreement, the Consent Judgment was submitted to the state court, signed by the judge, and filed on November 13, 2003, prior to any default. Neither party mentioned this fact in its submissions.

**4.** The extension of the original due date to May 17th arguably extended the cure date, or grace period, to May 27th. The two day difference is immaterial, and this opinion will refer to May 25th as the final deadline for payment.

**5.** A properly executed and filed proof of claim is *prima facie* evidence of the validity and amount of the claim. Fed. R. Bankr.P. 3001(f). Where the claim is based on a writing, the original or duplicate must be filed. *See* Fed. R. Bankr.P. 3001(c). Here, the Claim is properly executed and filed, and hence, satisfies the Claimant's initial burden of going forward with evidence to support its claim.

to pre-petition defaults where the termination notice is sent before the automatic stay takes effect. (*Objection,* at ¶ 9.) This distinction, however, ignores the rationale for the rule. The effectiveness of the termination does not depend on the timing of the default but on whether termination requires an act prohibited by the automatic stay. In other words, if a post-petition default triggers an automatic termination, the lease or contract will terminate in accordance with its terms.

*Trigg v. United States (In re Trigg),* 630 F.2d 1370 (10th Cir.1980), decided under the former bankruptcy act, illustrates this principle. There, the debtor was a lessee under oil and gas drilling leases which automatically terminated if the debtor failed to pay the advanced rent when due. *Id.* at 1372. The debtor defaulted *after* filing a chapter XI petition, and subsequently sought injunctive relief and an order of contempt against its lessor. The debtor argued, in the main, that the automatic stay contained in former federal bankruptcy rule 11–44(a) [6] prevented the termination of the leases. *Id.*

The Court rejected the argument, concluding that the bankruptcy stay did not prevent the automatic expiration of the leases according to their terms:

> The only portion of Rule 11–44(a) even arguably applicable to this action is the command that the Chapter XI "petition . . . shall operate as a stay of the commencement or the continuation of any . . . other proceeding against the debtor . . . ." Here, the debtors' failure to tender the annual rental caused the leases to lapse automatically by their own terms. *See Phillips Petroleum Co. v. Curtis,* 182 F.2d 122 (10th Cir.1950). No "proceeding" was involved within the meaning of Rule 11–44(a). *Cf., Good Hope Refineries, Inc. v. Benavides,* 602 F.2d 998, 1002 (1st Cir.) *cert. denied,* 444 U.S. 992, 100 S.Ct. 523, 62 L.Ed.2d 421 (1979) (automatic termination of an oil and gas lease for nonpayment of delay rental does not constitute a "proceeding" within the meaning of Bankruptcy Act s 11(e), 11 U.S.C. s 29(e)).
>
> Applying Rule 11–44(a) to stay the automatic termination of a lease caused by the default of the debtors would enlarge the substantive rights provided in Bankruptcy Act ss 11(a), 311, 314, 11 U.S.C. ss 29(a), 711, 714. The bankruptcy judge and the district court correctly held Rule 11–44(a) inapplicable to this case.

*Id.* at 1373 (footnote omitted).

*Trigg* remains good law under the Bankruptcy Code. *Hertzberg v. Loyal Am. Life Ins. Co. (In re B & K Hydraulic Co.),* 106 B.R. 131, 134 (Bankr.E.D.Mich.1989); *In re West Pine Constr. Co.,* 80 B.R. 315, 320 (Bankr.E.D.Pa.1987). In *Hertzberg,* the debtor took out a life insurance policy on its principal officer. The policy provided that if the premium was not paid when due, and remained unpaid by the end of the grace period, the policy would lapse. *Id.* at 132. The debtor defaulted in the payment of premiums, and shortly thereafter, the debtor's principal died. *Id.* The chapter 11 trustee argued that because the policy was executory at the time of bankruptcy, it could be assumed at confirma-

---

**6.** Former Rule 11–44(a) provided:

A petition filed under Rule 11–6 or 11–7 shall operate as a stay of the commencement or the continuation of any court or other proceeding against the debtor, or the enforcement of any judgment against him, or of any act or the commencement or continuation of any court proceeding to enforce any lien against his property, or of any court proceeding, except a case pending under Chapter 10 of this title, for the purpose of the rehabilitation of the debtor or the liquidation of his estate.

tion, and until then, the estate was not under an obligation to perform. *Id.*

Rejecting the trustee's argument, the court explained that the question of termination depended on the effect of the automatic stay:

> Rather, the issue must be whether termination requires the non-debtor party to undertake some post-petition affirmative act. Only this test reconciles the cases discussed earlier. When termination of the contract requires an affirmative act of the non-debtor party, the contract remains executory because such an act is stayed under 11 U.S.C. § 362(a). When termination occurs without any action by the non-debtor party, the contract is no longer executory and no longer subject to assumption or rejection.

*Id.* at 135–36 (footnote omitted); *accord J.E. Adams Indus., Ltd. v. Aurora Nat'l Life Assurance Co. (In re J.E. Adams Indus., Ltd.)*, 269 B.R. 808, 812–14 (N.D.Iowa 2001)(automatic stay did not prevent cancellation of insurance policy based on post-petition default under policy that terminated automatically if default continued past the end of the grace period); *see Intermet Realty P'ship v. First Pennsylvania Bank, N.A. (In re Intermet Realty P'ship)*, 26 B.R. 383, 387–88 (Bankr.E.D.Pa.1983)(installment sale contract terminated and property reverted to seller automatically in accordance with contract terms when debtor failed to make the final installment payment due post-petition).

█ Here, the Settlement Agreement essentially granted the debtor an option to pay $140,000.00 and satisfy the Consent Judgment. The option terminated on May 25, 2004, the end of the grace period. The Claimant did not have to send a notice of default or take action to trigger the termination of the option.[7] The option terminated with the passage of time, and hence, the automatic stay was not implicated.

### B. *Ipso Facto* Clause

█ *Ipso facto*, or bankruptcy, clauses, "automatically terminate the contract or lease, or permit the other contracting party to terminate the contract or lease, in the event of bankruptcy." S.Rep. No. 95–989, at 59 (1978); *accord* H.R.Rep. No. 95–595, at 348–49 (1977). They are rendered unenforceable by § 365(e)(1), which states

> Notwithstanding a provision in an executory contract or unexpired lease, or in applicable law, an executory contract or unexpired lease of the debtor may not be terminated or modified, and any right or obligation under such contract or lease may not be terminated or modified, at any time after the commencement of the case solely because of a provision in such contract or lease that is conditioned on—(A) the insolvency or financial condition of the debtor at any time before the closing of the case; (B) the commencement of a case under this title; or (C) the appointment of or taking possession by a trustee in a case under this title or a custodian before such commencement.

█ The application of § 365(e)(1) is limited to the three types of clauses listed in the subparagraphs. *Yates Dev., Inc. v. Old Kings Interchange, Inc. (In re Yates Dev., Inc.)*, 256 F.3d 1285, 1289 (11th Cir. 2001). If the termination or modification is triggered by a condition other than one

---

**7.** The debtor's objection erroneously assumed that the Claimant had to give notice. (*See Objections*, at ¶ 5) (The Claimant "is precluded by the bankruptcy stay from giving notice of default and thereby commencing the default period which would have resulted in the entry of a Consent Judgment.")

of those three, it will not be invalidated by § 365(e)(1). *Id.* (quoting *Summit Inv. & Dev. Corp. v. Leroux,* 69 F.3d 608, 611 (1st Cir.1995)); *In re C.A.F. Bindery, Inc.,* 199 B.R. 828, 833 (Bankr.S.D.N.Y.1996).

 The termination of the debtor's right to satisfy the Claim for $140,000.00 did not result from his insolvency or financial condition, the commencement of the case or the appointment of a trustee or custodian. Instead, it was caused by his failure to pay $140,000.00 by the May 25th deadline. It may be that bankruptcy made it more difficult to satisfy the condition, but that difficulty did not turn the condition into an unenforceable *ipso facto* clause.

In addition, the debtor could have still taken advantage of the optional payment provision. Section 108(b) extended the cure date for a period of sixty days beyond the petition date.[8] During that period, Margulis could have sought authority under § 365 to assume the Settlement Agreement and cure the default.[9] Alternatively, he could have sought authority under § 363 to pay the reduced amount. It appears that Margulis did neither because he did not have the money to cure the default. Instead, he simply wants the benefit of the reduction without satisfying his obligations under the contract.

## C. Forfeiture

 Finally, the increase in the amount of the Claim resulting from the

debtor's default does not lead to the allowance of a penalty or cause a forfeiture. The debt is the amount listed in the Consent Judgment. Margulis failed to exercise the option—granted few debtors—to pay less. Absent some other defense, he is obligated to pay the debt.

Accordingly, the claim objection is overruled, and the Claimant is directed to settle an order on notice.

---

**8.** Section 108(b) states in relevant part:

> Except as provided in subsection (a) of this section, if ... an agreement fixes a period within which the debtor ... may ... cure a default, or perform any other similar act, and such period has not expired before the date of the filing of the petition, the trustee may only file, cure, or perform, as the case may be, before the later of—

(1) the end of such period, including any suspension of such period occurring on or after the commencement of the case; or (2) 60 days after the order for relief.

**9.** Section 365(e)(1) applies only to executory contracts and unexpired leases. The parties' discussion of *ipso facto* clauses suggests a concession that the Settlement Agreement was an executory contract, an issue that need not be decided.